No. 14.—JAMES THOMAS, Plaintiff in Error, *vs.* WILLIAM M. HARDWICK, executor of Darius Gilbert deceased, Defendant in Error.

By the laws of England, as adopted in this State, an administrator *de bonis non* cannot call the representatives of the deceased executor or administrator to account for any property which their testator or intestate may have converted or wasted; nor can he claim or receive anything, but those goods, chattels, and credits, which remain in specie, and are capable of being identified as the property of the first testator or intestate.

Suits for assets wasted or converted, may be brought directly by creditors, legatees, and distributees.

The act of 1821, passed for the better protection of the estates of orphans and for other purposes therein mentioned, does not deprive persons interested of this common law right, but was intended to afford them additional remedies.

The act of 1816 is necessarily restricted to the only class of cases to which it applies.

The act of 1845, to define the rights and powers of administrators *de bonis non*, does not extend to suits brought and prosecuted to judgment before its passage ; to make it available in cases instituted since, would it not be necessary for the removed executor or administrator, or representatives of a deceased executor or administrator, to plead and prove that he had fully accounted with the administrator *de bonis non ?*  (*Quere.*)

An action of  debt was commenced  by  James Thomas against· Darius Gilbert, to the February term, 1840, of the Inferior Court of Hancock County.   At the August term thereafter, the death of the defendant was

suggested. At the August term, 1842, William M. Hardwick, as executor of Gilbert, was made a party to the suit, and pleaded *plene administravit præter.* At the February term next ensuing, he confessed judgment to the plaintiff for the amount of his demand with liberty of appeal. An appeal was entered. At the October term, 1843, of the Superior Court, Hardwick pleaded in abatement of the action, that since the last continuance of the cause, his letters testamentary had been revoked, and he removed from his executorship, by the court of ordinary of Hancock County. The plaintiff demurred to the plea. The demurrer was overruled by Judge Sayre, at the April term, 1846, who decided that the case was controlled by the act of 1821, which declares, that upon the revocation of letters testamentary, suits by or against the executor shall not abate by reason of the removal of the executor, but the removal being suggested of record, a *scire facias* may issue to make the successor a party to the suit, at any time after the appointment of the successor, and that the plaintiff was shut in to this course. He further held, that the administrator *de bonis non* had a right to maintain an action against the displaced executor for all the assets which had come into his hands, and that the act of the last General Assembly was only declaratory of this pre-existing right. To this opinion of the circuit judge the plaintiff excepted, and this writ of error is brought to reverse it.

James Thomas, in propria persona.

I maintain that, at common law, the administrator de bonis non can have no action against the executor, Hardwick, for anything administered by him, when the same is not as the testator left it, as when property has been changed into money, or where a waste has been committed.—*Lovelass on Wills,* 101 ; *Curtis* vs. *Vernon* ; 3 *T. R.* 587 ; 1 *Williams on Exrs.* 594 ; 1 *Gill and John.* 270 ; 5 *Randolph,* 51 ; 1 *Bar. and Har. Dig.* 552-3-4.

Such suits for assets, wasted or converted, may be brought directly by creditors, legatees or distributees.—5 *Randolph,* 51. ; *Lovelass on Wills,* 392 ; *Went. off. Exr.* 87.

An executor, having administered, is compelled to undergo the burthen of executor, and also may be sued as executor, though he cannot sue others, because he has not the will under the ordinary seal.—*Ibid.*

But admitting the right of administrator, *de bonis non,* to bring his action against the executor removed for misconduct, yet first at common law, it is the right of a creditor, legatee or distributee to sue the executor so removed, and nothing but a plea of transfer of all the assets, to the administrator de bonis non, will discharge him; and, 2d, that after action brought, if removed, this plea will not avail the original executor. To support the first position, *see* 2 *Williams on Exrs.,* 1196 ; *Ibid.* 373 ; *Keble* vs. *Keble, Hob.* 49. To support the 2d position, *see Curtis* vs. *Vernon,* 3 *T. R.* 578.

A removal is not a discharge of existing liability.—2 *Bailey's Rep.* 481.

Our statute nowhere declares the action *shall* abate ; it expressly declares it shall *not* abate. It nowhere declares the plaintiff shall make the administrator de bonis non a party ; it only declares the plaintiff *may* make him a party.

Our statute changes the common law, as to plaintiffs, by declaring their actions shall not abate ; it gives a right to recover, in the administrator de bonis non ; it does not change the common law, as to defendants, by absolving them from any fixed liability, but merely gives an additional remedy to plaintiffs, which they did not have at common law, by pursuing the fund, either in the hands of the original executor, or in the hands of the administrator de bonis non.

The statute of 1816 can have no bearing on the question, because, 1st, in the language of the statute, it does not embrace the case at bar; 2d, because, if it does embrace the case at bar, in its language or spirit, the act would be, to that extent, unconstitutional, being contrary to the title of the act. The act is "An act to autho-

rize the several courts of ordinary, in this State, to appoint their clerks administrators, de bonis non, in certain causes."

DAWSON and McHENRY for Defendant.

LUMPKIN, Judge, having stated the facts of the case, proceeded to deliver the opinion of the court.

We are met *in limine* by the assertion of the Circuit Judge—that the Act of 1845, giving by implication to an administrator *de bonis non*, the power to call upon a removed executor or administrator, or the representative of a deceased executor or administrator, to account for assets previously wasted or converted, was only declaratory of a right previously existing. Is this so? We think not. It is needless to go into the history of administrators; suffice it to say that in this State, the power of appointing and superintending the conduct of them is assigned to our Courts of Ordinary; and that we have copied in the main, the statutes of 31 Edw. III., Ch. 2d; and 21 Hen. VIII., Ch. 3d.

An administrator *de bonis non* has not full, complete, and original jurisdiction. He is appointed to finish a business already begun, and in most cases partially performed. He is an administrator *de bonis non administratis*, viz., of the assets not already administered; like all other trustees his authority is derivative, and he cannot transcend his commission. His office, therefore, *ex vitermini*, confers upon him no right to sue for assets which have been previously administered. An administrator *de bonis non* is entitled, says Bacon, (*Title Exs. and Admins. B.* 2,) to all the goods and personal estate, such as terms for years, household goods, &c., which remain *in specie*, and were not administered by the first executor or administrator, as also to all debts due and owing to the first testator or intestate. (*Salk.* 306; *Skinner,* 143; *Bos. and Pul.* 310.)

Also it is holden, continues the same authority, that if an executor receives money in right of the testator, and *lays it up by itself*, and dies intestate, that this money shall go to the administrator *de bonis non,* being as easily distinguished to be part of the testator's effects as goods in specie. But if A dies intestate, and his son takes out administration to him and receives part of a debt, being rent arrear to the intestate, and accept a promissory note for the residue, and then dies intestate, this acceptance of the note is such an alteration of the property as vests it in the son, and therefore at his death it *shall go to his administrator, and not to the administrator de bonis non,* (*Barker* vs. *Talcott,* *Vernon,* 433; 2 *Vent.* 362; *Rol. Ab.* 380.) It would seem, then, that the only question to settle is this. What constitutes an administration of the assets so far as the administrator *de bonis non* is concerned? I annex this qualification to the inquiry, because to *administer*—so far as the administrator *de bonis non* is concerned—is one thing, and to *administer fully,* so far as creditors of the estate are interested, is quite another, and a different thing. And yet we fear that this distinction has been too often overlooked and disregarded, and has given rise to most of the misapprehensions which prevail upon this subject. To *administer* goods, then, is to *alter, change, or convert* them. Where lands and negroes are sold by order of the Court of Ordinary, or perishable property, by the act

of the party himself, they are *administered* so far as the successor is concerned. He cannot maintain an action for them ; of course the predecessor is liable for their proceeds to creditors, legatees and distributees. If an executor or administrator be removed, or die, having on hand *in kind* a portion of the original assets, these could be sued for and recovered by the administrator *de bonis non*. These principles are clearly established by a train of decisions commencing several centuries ago in England, and coming down to our own time in this country, (*Duce* vs. *Baylie, Freem.*, 462 ; 2 *Lev.*, 100 ; 1 *Ventr.*, 275 ; 3 *Reb.*, 298, 427, 463, 495, 549, ; 3 *Bac.*, 19, 20 ; 2 *Leigh*, 512, 525 ; 1 *Gill and John. Rep.*, 270 ; 9 *Leigh*, 580.)

Suppose the assets of the estate have been exhausted, and misapplied by the payment of debts of inferior degree before those of a superior, will it be pretended that an administrator *de bonis non* could maintain an action against his predecessor, or the estate of such predecessor, for this *devastavit* ? Such a precedent or principle is not to be found.

The statute of 30 *Charles II. Ch.* 7, explained and perpetuated by the *4th and 5th of William and Mary*, expressly declares in its preamble— that executors and administrators of executors and administrators for want of privity, were not before answerable, nor could be sued for debts due by the first testator, or intestate—notwithstanding such executors or administrators had wasted the estate of the first testator or intestate ; and, to remedy this evil, it makes such second executors or administrators chargeable. How ? To the administrator *de bonis non* ? No ; but chargeable in the same manner as the first executor or administrator should, or might have been ; *that is directly to the creditors.—Wernick's admr.* vs. *McMurdo*, 5 *Ran.* ; 1 *Sand*, 219 *note E*. In the Virginia case from which the foregoing exposition of the British Statutes is quoted, the Court of Appeals boldly challenge the production of a single case— the dictum of a single Judge, or the assertion of any elementary writer —that the administrators *de bonis non*, either at law or in equity, can support an action, or file a bill for account against the representatives of a defaulting executor or administrator. Thus stood then the English law as adopted in this country. Let us see how far the statutes passed by the General Assembly in 1816, 1821 and 1845 have affected the doctrine.

As to the first of these acts, it is enough to say, that the case under consideration does not fall within it. It provides for one class of cases only, and that is where the administrator or administrators die, and the administrator *de bonis non* cannot be granted from the incapability of the persons applying to give the security required by law, or when the persons appointed refuse to give such security. To remedy *this evil* that act was passed. Should a question ever originate under the *second section*, its validity may well be doubted, under that clause in the 17th Section of the first article of the constitution which forbids the passage of any law or ordinance containing any matter different from what is expressed in the title thereof. What was the mischief intended to be redressed by the act of 1821 ? It fully explains its own object. Doubts had arisen under the previous legislation of the State as to the power of the courts of ordinary to remove executors, administrators and guardians, from their respective trusts, where the authority had not been expressly given, to the injury of the estates of orphans and the delay of justice.

Therefore, *for the better protection of the estates of orphans,* and to prevent the delay of justice, it is enacted, that whenever it shall come to the knowledge of the court of ordinary that any guardian or executor or administrator shall waste, or in any manner mismanage, the estate of any orphan, or deceased person, or does not take due care of the education and maintenance of such orphans, (☞ or " deceased person ; " *repeated, of course, by mistake,*) according to his, her or their circumstances ; or where such guardian, executor or administrator, or their securities, are likely to become insolvent ; or where such executor, administrator or guardian shall fail to make returns within the time prescribed by law, &c. ; such guardian, executor or administrator shall be cited to appear, and investigation had of their actings and doings, and the court is empowered to revoke the trust already confided, and pass such further order as it may think fit and expedient. And upon the revocation of such letters testamentary, letters of administration, and guardianship, it is declared that suits by or against either shall not for this cause abate ; but the removal being suggested on the record, a *scire facias* may issue to make the successor of such removed person a party, at any time after the appointment and qualification.

In scanning the whole of this Act, would the thought ever occur that it was designed to confer any benefit upon a trustee who had been removed by the proper authority from his office for misconduct ? To tolerate such a plea in abatement interposed by him, would be, most emphatically, to allow him to take advantage of his own wrong : *Nemo allegans suam turpitudinam audiendus est.* He is punished by the Ordinary for a breach of the trust confided to him, by the revocation of his letters, and he now seeks to shelter himself under that *sentence of condemnation from liability already incurred* ; and that, too, without pretending by his plea that since his removal he has accounted with his successor for the effects with which he is chargeable. The Act of 1821 was not passed for the protection of delinquent trustees ; it did not repeal the common law, but was intended to afford additional remedies, and especially to prevent delay in the pursuit of rights which had already accrued. It is argued that unless the proper representative is made a party to the action pending, no one else would have the means or the inclination to ascertain whether the demand sued upon was proper or not. This is true in all suits against executors *de son tort,* and where the attempt is made, as in the case under discussion, to charge the defendant *personally,* the instinct of self-preservation will be the most satisfactory guaranty against a wrongful recovery. We will not say either how far an administrator *de bonis non* might not make himself a party by *interpleading,* should it be deemed necessary for the protection of the estate.

When an improper administration has been revoked, (and the removal of an executor is strictly analagous,) a creditor may sue the displaced administrator, and he can only defend himself by showing that he has *legally* administered all of the assets, except those delivered over to the succeeding administrator or executor, and if any remain in his hands not delivered over, or if he has committed a devastavit by paying debts of inferior before those of a superior dignity, the creditor will recover.—6 *Rep.* 18, *b. Packman's case ;* 11 *Vin. Abr.* 119, *pl.* 5 *admr. of Wernick* vs. *McMurdo,* 83, 84.

Such was the law previous to the Act of the General Assembly of

Thomas *vs.* Hardwick, Executor.

1845. It is suggested by a gentleman at bar that the passage of this statute was procured to meet a particular case, (not the one before us.) We know nothing to justify such an insinuation. It may have been dictated by the purest patriotism, and with an eye single to the public weal. As it is calculated, however, to delay creditors, legatees, and distributees, by compelling them to wait until the accounts between the administrator *de bonis non* and his predecessor, or the representatives of his predecessor, can be adjusted, at the end perhaps of a protracted litigation; to defeat the successful operations of their just claims, by requiring it to be done through the intervention of one whose interest might, and probably often would, be adverse to theirs and coincident with that of his nominal adversary; to lessen the ultimate security by multiplying the agencies through which the estate is to be settled; and to diminish the assets, by taxing commissions in favor of every successor through whose hands they should pass; we repeat that for these and many other reasons we should construe strictly the Act of 1845, did it become necessary in this case, as it obviously does not. The plaintiff's right of action had accrued previous to its passage against Hardwick, the executor. He had prosecuted his claim to judgment, charging the defendant personally with the debt. It is not in the power of the Legislature, we apprehend, to divest him of a right thus far perfected.

Clearly convinced, then, as we are, that an administrator, *de bonis non*, has no right at common law to call to account the representative of a deceased executor or administrator, for a waste or misapplication of the assets; that the Act of 1816 and 1845 do not embrace the present case; and that the right which the creditor had to proceed against a displaced executor or administrator for the goods wasted or converted, was not taken away by the Act of 1821; but that under it he might still proceed against the executor, or administrator, and reach the fund in his hands, as if his authority had not been revoked; or substitute the administrator, *de bonis non*, at his election; our judgment is that the court below erred in overruling the demurrer to the defendant's plea—especially as the plea does not aver as it should have done—that the defendant had duly administered all of the assets which came to his hands except what he had delivered over to the succeeding administrator. It is ordered, therefore, that the judgment below be reversed, and that the plaintiff in error do recover his cost.