No. 61.—RACHEL BROACH and ROBERT M. BROACH, executrix and executor of George Broach, deceased, plaintiffs in error *vs.* GEORGE WALKER, executor of John Martin, deceased, defendant in error.

[1.] It is a good plea for a defendant who is sued as executor, that since the last continuance of the cause, his letters testamentary have been revoked and administration committed by the Ordinary to another, to whom he has delivered over all the goods in his hands.

This was an action of assumpsit, brought by the plaintiffs in error against the defendant in error, in Pulaski Superior Court. A trial was had, and a recovery by the plaintiffs; from which the defendant appealed. While the cause was pending on the appeal, the Court of Ordinary of the County of Bibb, (being the proper court,) *annulled the probate of the will of said Martin, and declared him to have died intestate, in consequence of the birth of a posthumous child,* and

Rachel Broach and Robert M. Broach *vs.* Walker.

thereupon granted administration of his estate to Thomas D. Walker, to whom the defendant in error immediately turned over all the assets in his hands.  The cause of action, as alleged in the plaintiffs' declaration, was for money had and received by said Martin, to and for the use of said Broach, and for other causes of action arising in the lifetime of the said respective testators, out of dealings and transactions between them ; all of which was set forth in the bill of particulars attached to the plaintiffs' declaration, and which it is unnecessary now to set out.   The defendant pleaded *non-assumpsit, payment, statute limitations &c.*

At the April Term, 1847, of the Court below, Judge Scarborough presiding, the defendant Walker pleaded *puis darrein continuance* the foregoing facts respecting the annulment of the will of Martin by the Court of Ordinary ; the declaration and judgment of that court that he died intestate; and the appointment of an administrator as aforesaid ; and alleging that he, the defendant, had settled with his successor, the administrator so appointed, and turned over to him all the assets in his hands.

The counsel for the plaintiffs demurred to the plea as insufficient in law to discharge the defendant.

The Court below overruled the demurrer, and *held* that the said plea was a good defence, and the plaintiffs were not permitted to proceed further in their said suit against the said defendant.   To which decision of the Court below they excepted, and have assigned the same for error.

BLAKE, BAILEY, and POWERS & WHITTLE, for plaintiffs.

HARRIS, for the defendant.

S. R. Blake for the plaintiffs, contended —

First. That the will of Martin was a valid and subsisting will up to the time of the repeal of the probate, and all the acts of Walker as executor thereto, are binding upon the estate and the parties interested therein.   *Toller on Ex.* 76; 15 *Sergt. & Rawle,* 39, 42; 1 *Williams on Ex.* 402, 403; *Bro. Abr. Administrator, Pl.* 33.

It is true, that the executor derives his authority from the will, and that in this case, the will has been set aside and an intestacy declared in conformity with the statute; but this intestacy may not be predicated of the whole estate, since a portion of that estate

must be recognised as administered; the probate of the will is conclusive evidence of the existence of the will until annulled; all acts then of the executor as such, during the continuance of the probate, will be protected and enforced as in a due course of administration. *Gilb. Eq. Cas.* 207, 208; 3 *Term R.* 130, 131, 132.

Second. The will of Martin being good, and the acts of the executor valid and binding, as in due course of administration, the incoming representative can only administer upon such portion as is not administered, and is in effect and character an *administrator de bonis non*, and as such had no right of action against the removed executor, for or concerning any portion of the estate not remaining in specie, for any thing administered upon. *Thomas* vs. *Hardwick*, 1 *Kelly R.* 78.

Being such administrator, whatever may have been the cause of removal of the executor, the principle which controled in the decision of Thomas *vs.* Hardwick must control in the present case.

Third. The acts of the removed executor having validity and a binding force upon the estate and parties in interest, there must be a *continuing* liability against such executor; otherwise gross and manifest injustice may at any time be effected against creditors. The executor may contest and litigate all the claims against the estate for four years, or such period as is prescribed by the statute against such claim, and at the end of such period by collusion and for the very purpose of *delaying and defeating creditors*, may have himself dismissed. During the whole of that period, there has been a valid and recognised representation, and if now the action is to abate, if the executor is to be relieved of his liability, then the creditor in the midst of a vigorous and diligent pursuit of his rights, is arrested and subjected to the hazard of a bar by the statute of limitations.

And again, the same gross injustice might be practised against the distributees themselves. The executor may have converted the effects of the estate into money, which he retains in his possession after removal. This Court held in the case of Thomas *vs.* Hardwick, that previously to the Statute of 1842, the administrator *de bonis non* had no right of action against the removed executor for the assets so changed or *administered;* the distributees have no recourse against the administrator *de bonis non* for them, and if they have not recourse against the removed executor upon a continuing liability, they must endure the grossest wrong without a remedy.

Rachel Broach and Robert M. Broach *vs.* Walker.

Fourth. A liability attaching before removal may not be relieved by the removal. 2 *Bailey R.* 481.

Here the liability was fixed by the judgment against him as executor, and he had not authority to *alien* or *transfer* the property in his hands after judgment; that judgment by our statute binding the property from its date, so far as to prevent an *alienation* or transfer, a judgment on the appeal against the removed executor would operate by relation back to the date of the first judgment, and bind such property wherever found; whether retained by the removed executor or turned over by him to the newly appointed representative.

Fifth. It was the right and the duty of the executor in accounting with the administrator to have retained assets sufficient to satisfy this judgment rendered against him.

If this judgment had any lien upon the property, a transfer of any kind of that property might seriously injure and disturb such lien.

This plea therefore would be good before action brought or judgment obtained, but not afterwards; the executor might and ought to have retained. *Curtis* vs. *Vernon*; 3 *Term R.* 587.

IVERSON L. HARRIS, for the defendant.

The plea *puis darrein continuance* of defendant alleges these distinct facts —

First. That *since* the last continuance of this cause, the Court of Ordinary of Bibb County, having exclusive jurisdiction of the questions upon which its *judgment was made, had annulled the probate* of the will of John Martin, and *declared him to have died intestate, in consequence of the birth of a posthumous child.*

Second. The revocation *thereby* of the letters testamentary of defendant.

Third. The grant of administration on Martin's estate to Thomas D. Walker.

Fourth. And that all the property which came to the hands of defendant, and which was *unadministered, had been delivered over to the administrator.*

To this plea plaintiffs *demurred.*

The facts alleged in the plea are, by the rules of pleading, held as *admitted by the demurrer*, and cannot be in this argument the subject of contest or question.

It is deemed unnecessary to remark upon the third ground of error assigned by plaintiffs, further than to say that the demurrer of plaintiff is a distinct admission of this plea having been filed *since* the last continuance of the cause.

This brings us to the main question to be decided. Does the suit of plaintiffs against defendant *abate* by reason of the facts stated in the plea?

That it must abate, *ex necessitate rei*, appears to be the conclusion of both law and common sense.

There can be no pretence that defendant is an executor *de son tort*. Plaintiffs are estopped to allege or argue that he is, for having admitted by their demurrer that his *letters* testamentary were re-called, they have conceded that he had an *original lawful authority* to administer the goods of Martin.

He who has a *lawful* authority is no intruder.

Wentworth, at page 320, defines an executor *de son tort* to be " a person who takes upon him the office of an executor by intrusion, not being so constituted by the testator or deceased."

Defendant cannot therefore be charged as executor *de son tort*.

Nor can he for a *devastavit;* for the plea alleges, and the demurrer admits, that he has administered all the property, &c. of Martin, which came to his hands, except that portion delivered to the administrator.

The ground upon which it is sought to hold this defendant amenable, is thus narrowed down to the fact *that he bad assets in his hands* when his powers as an executor were struck dead, by the will, motion and authority of law.

It is difficult to believe that the learned adversary counsel will gravely argue that defendant, stripped of all legal authority as executor, should *retain* property in his hands in which he has no legal interest, and the custody and disposition of which belongs to another.

Could the defendant *rightfully* retain, when he has no *lawful* authority to protect his possession?

If he had retained assets without *lawful* authority and sold or converted them into money, with a view to pay the creditor who has begun suit, by this conversion he would have made himself an executor *de son tort*.

This would be a perilous dilemma.

That the defendant could not retain after his powers had been annulled, is to be inferred from the clear principle that the pos-

Rachel Broach and Robert M. Broach *vs.* Walker.

session of an executor or administrator relates by operation of law back to the death of decedent.   The law recognises no interregnum.   The grant of administration to Thomas D. Walker, was therefore an admission of the right of Thomas D. Walker to the possession of all the assets in the hands of the defendant.

Such right to possession, could if it had been withheld  been enforced by possessory warrant under our Act of 1821 — unquestionably the title, by an action of trover.

And what *legal* defence could the defendant in either case  have made ?

If these positions be true, how  could the defendant  have paid plaintiffs' claim, when he had *no authority* to  retain assets for such a purpose.

The law uses no such  contradictory language, as that  you shall retain and you shall not retain; you shall illegally retain, that you may pay, when you have neither the right to retain or pay.

Such contradiction and absurdities can be  produced only by the disregard of clear principles.

Eurystheus never imposed so great a task as  would be the maintenance of such conflicting and irreconcilable propositions.

All the cases cited and  relied on by plaintiffs' counsel are cases in reference to *executors de son tort;* and consequently inanalogous.

They, especially  the earlier cases, establish the rule, that suits against *executors de son tort* shall not abate by matter *ex post facto ;* as by grant of administration  to  him who begun  in *wrong*, or by grant to another and turning over the assets to *legal* administrator. *Stubbs* vs. *Rightwise, Croke Eliz.* 102.

The intruder was punished for his *tort.* It gave a cause of action, and *his subsequent* conduct was not allowed to take it away.   *Curtis* vs. *Vernon*, 3 *T. R.* 587 ; 2 *H. Black. R.* 18; *Vaughan* vs. *Brown*, 2 *Strange R.*

This extreme rigor  has been  greatly abated as  will appear by the cases just cited, as also by *Rattoon* vs. *Overacker*, 8 *John.* 126, and especially the case in 1 *Salkeld R.* 313. See case of *Picard* vs. *Brown*, 6 *T. R.* 551.

It is conceded upon the authority of the cases of *Vernon & Curtis, Bradbury* vs. *Reynal, Croke Eliz.* 565, and of *Padget* vs. *Priest*, 2 *T. R.* 97, that no  defendant can have a plea of *puis darrein continuance by his own act.*  It must be the act either of the law or of the plaintiff that can entitle him to it.

There the defendant was passive.   The law in annulling the will

55

Rachel Broach and Robert M. Broach *vs.* Walker.

removed the officer—unlike the removals under the Act of 1821—here the office and officer simultaneously expired; under it the office remains unchanged, untouched; the officer only is displaced. In this latter case the officer's misconduct is the cause of his amotion, it is therefore *his act.*

The case of Thomas *vs.* Hardwick, 1 *Kelly R.* 78, is relied on by plaintiffs' counsel as entirely analogous to this, and decisive of it. Its facts and principles are both dissimilar. Hardwick, on the appeal, pleaded *puis darrein continuance* that his letters testamentary had been revoked, and he removed from his executorship, and asked that the *suit abate.*

There was no allegation in that plea of having delivered over the assets in his hands, and admitted so to be by the plea on the record of *plene administravit præter* to his successor the administrator *de bonis non.*

Hardwick was *removed* for mismanagement from office. The Act of 1821 expressly prohibits the *abatement* of a suit in the case of a revocation of the letters testamentary of an executor who has mismanaged the estate in his care. This act furnishes the exception to the general rule of the common law in reference to the abatement of suits. In all other cases the common law principle remains, and this is admitted by the opinion of the Court. The palpable differences in the cases consist in—

First. The removal of the one by the act of the law, of the other *by his own act.*

Second. In the facts averred in the respective pleas of *puis darrein continuance.*

Third. One had *assets in hand,* and sought, with the brand of censure on his brow, shelter under that condemnation from a liability not only incurred, but distinctly admitted by his plea. The other, *without assets in hand,* and without any fault or agency on his part in causing the recall of his letters, simply asked protection from annoyance by continued suit, as there was no *fund* to be reached by the judgment if given against *him.*

*By the Court*—LUMPKIN, J. delivering the opinion.

George Walker, it seems, qualified as executor upon the last will of John Martin, deceased; and in that character he was sued by the representatives of George Broach, deceased, for a debt due by the testator of the one party to the testator of the other. Under

Rachel Broach and Robert M. Broach *vs.* Walker.

the act of 1834, *Prince*, 254, making marriage *or* the subsequent birth of a child for which no provision is made, sufficient cause to set aside a will, George Walker's letters were revoked, and an intestacy declared upon the estate of John Martin pending the suit, at the instance of Broach's estate.

George Walker immediately turned over to his successor, all the assets in his hands not already administered, and pleaded this settlement in bar of his liability.

It was held to be a good defence by Judge Scarborough; [1.] and we are called upon in this writ of error to reverse this judgment. No direct authority upon the question has been produced. The conviction of our mind is, upon the law as well as the reason of the case, that the judgment below should be affirmed.

I find, upon research since the argument, that this doctrine has undergone a thorough examination by the Court of Appeals of Virginia.

In Hunt *vs.* Wilkinson, 2 *Call R.* 41, administration was granted upon the estate of Charles Hunt, deceased. Wilkinson brought debt against the administratrix, and at June Rules obtained an office judgment. At the succeeding quarterly court, on the motion of the defendant, the office judgment was set aside, and Mrs. Hunt was permitted to plead " that since the institution of this suit, and during the pendency thereof, to wit, on the 20th day of July, 1795, the will of Charles Hunt, deceased, duly authenticated and proven, was committed to record by the proper court, and administration with the will annexed, was granted to her in due form of law; whereby she became bound to surrender her letters of administration previously granted before the appearance of the said will; in which case she ought to be sued as administratrix *with the will annexed* of Charles Hunt, deceased, and not as administratratrix, as in the plaintiff's writ is alleged. Wherefore she prays judgment of the said declaration, that the same be quashed."

The plaintiff objected, that the plea ought not to be received, but was overruled by the court, and thereupon he filed a bill of exceptions. The District Court were of the opinion that the judgment of the County Court was erroneous, " because that court permitted the defendant to set aside the office judgment, by filing a plea *puis darrein continuance* in abatement of the writ, which was inadmissible."

From this decision an appeal was taken. For the judgment of the District Court it was insisted, as a well established rule, that a

Rachel Broach and Robert M. Broach *vs.* Walker.

suit shall not abate by subsequent matter without plaintiff's fault; as if a *feme-sole* marries, the defendant is knighted, or an executor *de son tort* becomes administrator during the progress of the suit. The second administration did not, therefore, abate the writ in the present case, when there was no fault on the part of the plaintiff, whose suit was rightly begun.

The judgment however of the District Court, was reversed and that of the County Court affirmed, and that after two solemn arguments. Fleming, Judge, says "there are two questions in this case. First. Whether such a plea as this will abate a suit at all? and if so, second, whether it could be pleaded after an office judgment? With regard to the first question, it seems to me to stand precisely on the same ground as if the administration with the will annexed had been granted to some other person, and in that case I think it clear, that it would have abated the suit, because in her first character of general administratrix, she was bound to make distribution according to the statute; but when the will was annexed to the second administration, it was necessary to conform to that, as far as the nature of things would admit. I think therefore that there was such a change produced by the second administration, as ought to have abated a suit brought against the defendant under her first character. The one administration was a complete *supersedeas* to the other. And this matter could only be pleaded in the form of a plea *puis darrein continuance.* For as it did not exist at the time of the office judgment, it could not then be pleaded; and unless it could be pleaded in this form, of course it could not be taken advantage of any how. Upon the whole, I think that the judgment of the County Court was right."

Carrington, Judge. "In this case, at the time of the office judgment Mrs. Hunt was defendant in her character of general administratrix; but before the end of the next term, that character had ceased, and all her powers in that capacity were done away and destroyed in the production and proof of the will, so that she was no longer general administratrix, but was then acting in a character correspondent to that of executrix, charged with the execution of the will instead of the statutory administration; and the will might have contained very different provisions from those directed by law in case of an intestacy. Besides, upon all judgments an execution necessarily follows, or the judgment would be of no use to the plaintiff. Now, in the present case, if a judgment were rendered how would the execution issue? Not against the estate

Rachel Broach and Robert M. Broach *vs.* Walker.

in the hands of the general administratrix to be administered, because there would be no such character in existence conversant in the administration.   In such a case, the officer would not and could not have obeyed the precept.   Neither could it have issued against the estate in her hands to be administered as administratrix with the will annexed, because the execution must have pursued the writ, and the clerk neither could or would have varied it from the terms of the record.   The judgment therefore would have been wholly useless.   Under every point of view then, I think the proceedings of the York Court are correct."

Lyons, Judge, upon the re-hearing.   " By considering the character of the defendant as changed, no inconvenience will result, whereas a contrary doctrine might involve the securities and create mischief.   But if her character be entirely changed, and the estate, by operation of law, transferred to her in her new character, it seems to me that it must necessarily abate the suit; *as a change of character without any fault in the defendant, constantly has that effect.* Thus all suits cease, when administration during minority, ceases; and so do the actions against such administrator, according to the rule in *Pigot's Case, 5 Coke R.* 29; *Brownhead* vs. *Spencer,* 2 *Brownl. R.* 247 ; 2 *Wentw.* 138.

" If the administration is repealed, the administrator cannot take out execution, because his title is taken away.   *Barnehurst* vs. *Sir Ch. Yelverton, Yelverton R.* 82; 2 *Wentw.* 137.

" An executor cannot found an action on what he did as administrator, although he be the same person, and might have released; for he ought not to have an action in this manner.   *Sir Hen. Slingsby* vs. *Lambert et ux. Cro. Jac.* 394; *Brudnell's Case,* 5 *Coke R.* 9 ; *Robinson's Case, Ibid.* 33.

" These cases are in principle the same as that at bar, and therefore appear to me to decide the question.

" It was objected that the plea should have been sooner filed. But to this I answer, that the defendant had no day in court, as the fact had happened since the last continuance, as it were, and therefore was pleadable at that time.   For whenever the cause of abatement happens after the last continuance of the suit, it may be pleaded in that manner; because the defendant had no day in court to plead it in any other form.   And the reason is the same where the fact happens after the judgment in the clerk's office, for the defendant should have an opportunity of showing the change in his situation; but as this cannot be done when it takes place after

the judgment in the office, he should be allowed to do it afterwards. Upon the whole I think that the judgment of the District Court should be reversed."

Pendleton, President. " *If the administration with the will annexed had been granted to a third person, there could have been no doubt, since her authority being at an end, all pending suits against her as administratrix must have ceased with it.* And the only difficulty arises from the second administration having been granted to herself, as she is to be still sued, although in a different character. We think, upon principle, that she ought to be proceeded against in her new and true character. By her second appointment, her first set of securities are discharged; and yet they might be involved if creditors might proceed in their suits upon the first administration. I am satisfied, and so concur in opinion with the other three judges, that the judgment of the County Court should be affirmed."

This case needs no comment. In it the estate was changed from an intestacy to a testacy ; in that under discussion from a testacy to an intestacy. Still, *mutatis mutandis,* after making the necessary changes, the reasoning is precisely the same. And it is worthy of remark, that the only difficulty and contrariety of opinion, either with counsel or the court in the Virginia case, grew out of the circumstance of the management of the estate having been confided to the same person. All agree, that if the first and second representatives were different, the action, it was clear, could not proceed. Besides, this learned bench appear to have thought the bare fact of a revocation of the former authority, and the second appointment, enough of itself to arrest the further progress of the suit, without requiring the defendant to aver and prove that the assets in hand remaining unadministered, had been delivered over to the successor.

It was urged in argument, that *plene administravit* after suit commenced, was never admissible, nor any other defence which would go to the discharge of the defendant from a liability already incurred. And this position was assumed from several *dicta* to be found in the books ; as for instance, it is stated in Lomax on Executors that a defendant sued as administrator, may plead, that *pendente breve* administration was committed to another ; (1 vol. 202,) that is, after suing out of the *original* writ and before declaration filed. And again, when a defendant would plead the revocation of his administration, *before the action commenced, &c.*

*Garter* vs. *Dee, Freem. R.* 13; *Palmer* vs. *Litherham, Latch. R.* 267; *Lawson* vs. *Crofts,* 1 *Keb. R.* 114.

The reply to this is, that when the subject matter of defence happens or accrues after the action is brought, justice requires that the party be allowed to plead it. Suppose an administrator or executor, conscious of a sufficiency of assets to pay outstanding debts, were to suffer a judgment by default, and was afterwards notified of outstanding debts of higher dignity than that sued on, and of a size large enough to exhaust the whole estate; can it be doubted, but that he would have opportunity afforded to protect himself, by a plea *puis darrein continuance?* I apprehend not. And so of any other available matter that has arisen in the course of the litigation. In the language of the law, the party must have his day in court for this *new* matter. Our conclusion therefore is, that the judgment of the Circuit Court must be affirmed.

If the revocation of the grant of probate or of letters of administration, because of the misconduct of the executor or administrator *(Prince* 245,) shall not operate to discontinue or abate any suit then pending, but the same shall be conducted in the name of the successor to final judgment or decree, will not the Act of 1821 reach and apply to the present case?