1. Jurisdiction of an equity suit by creditors of an estate, seeking to recover on claims due them by a deceased person, is not lodged in the superior court of Spalding County merely because certain heirs at law of the deceased reside in that county, no affirmative relief being prayed against the heirs.
2. Nor is jurisdiction of such suit vested in the superior court of such county because of the residence therein of one who had been administrator, but who had been removed; the suit as to him being against him in his representative capacity, and no affirmative relief as to him as an individual being sought.
3. A verdict and judgment against an administrator in his representative capacity, based on a claim against the estate, rendered after he had been removed from office, can not bind the estate.
4. It was erroneous to overrule the demurrers and to appoint a receiver.
 No. 13734. MAY 17, 1941.
Mrs. Addie Nolan and Mrs. Wylene Barnes, on October 30, 1940, filed in Spalding superior court their suit in equity against W. E. Waldrop, administrator of the estate of Mrs. Emma B. Maddox, and an heir of said deceased, against Lutie Waldrop, Ruby Waldrop Stubbs, Woodie Waldrop, Emma Waldrop, Quincey Bell Waldrop, Wilson Waldrop, Harris Waldrop, and Robert Lewis Waldrop, residents of Spalding County, Harris Waldrop and Robert Lewis Waldrop, minors, Mary Waldrop, of Troup County, Henry Jackson, of Fulton County, Jessie Jackson, of the State of Florida, Kirby Cheek Maddox, of the State of North Carolina, and against J. L. Bailey, administrator of the estate of Emma B. Maddox, resident of Butts County, Georgia. The prayer was for injunction, receiver, and other relief.
It was alleged, that at the August term, 1937, of the court of ordinary of Butts County W. E. Waldrop was duly appointed and qualified as administrator of the estate of Mrs. Maddox, who had died a resident of Butts County about May 8, 1937; that petitioners *Page 235 
presented to said administrator a claim against said estate for nurse services and housework, and, nothing definite being done by the administrator toward the payment thereof, separate suits were filed by petitioners against him, and on October 2, 1939, at the October term of Spalding superior court said cases were tried, verdicts rendered, and judgments obtained in favor of the plaintiff's against W. E. Waldrop, administrator of Mrs. Emma B. Maddox's estate, in the sums of $3000 for Mrs. Barnes and $1440 for Mrs. Nolan; that motions for new trial were overruled on September 14, 1940, and no exception was taken; that in September, 1938, a petition was filed by Kirby Cheek Maddox, who claimed to be the adopted son of the deceased, in which he asked for removal of W. E. Waldrop as the administrator of the estate, on the grounds of waste and mismanagement; that a hearing was had on said matter on October 4, 1938, and by order of the court of ordinary of Butts County W. E. Waldrop was removed as administrator and J. L. Bailey was appointed administrator de bonis non in the place of Waldrop; that Waldrop filed an appeal, and the superior court of Butts County overruled a motion to dismiss his appeal, and then reversed the judgment of the court of ordinary and sustained the administrator's demurrer and plea to the jurisdiction of the court of ordinary; that the case was then carried to the Court of Appeals of Georgia, where, on September 29, 1939, the judgment of the superior court was reversed on the sole ground that no valid appeal bond had been filed; that on October 30, 1939, J. L. Bailey, who had been appointed administrator de bonis non, made the usual oath and gave the bond required of administrators.
It was further alleged, that in October, 1939, a petition to the superior court of Butts County was filed by Quincey Bell Waldrop, an heir of Mrs. Emma B. Maddox, against G. D. Head, ordinary of said county, in which she made the following allegations: that since the discharge of Waldrop as administrator no citation had been published, giving notice of the appointment of an administrator de bonis non of the estate of Mrs. Maddox, and she so alleged in a petition filed by her in the court of ordinary; that the said petition showed that she had been selected in writing by a majority of the heirs of the late Mrs. Emma B. Maddox, and nominated to be appointed administratrix de bonis non of her estate, and she prayed the court of ordinary to issue and publish citation *Page 236 
to inquire why letters of administration de bonis non should not be granted to her; that the ordinary refused to issue a citation, and failed to have citation published or to permit petitioner to have it published; and she prayed for mandamus absolute against G. D. Head, ordinary, requiring him to issue and publish citation. It is alleged in the petition in the instant case, that rule nisi was issued and served; that the proceeding is still pending in court; that the plaintiffs in that suit, "so these petitioners are informed and believe," contend that the appointment of the administrator J. L. Bailey, of Butts County, was illegal and void by reason of the failure of the ordinary to require or have published the necessary citation for his appointment; and petitioners allege that the estate of Mrs. Maddox has sufficient assets with which to pay petitioners' judgments; that administrator W. E. Waldrop declines and refuses to pay, although he has in his hands, or should have, sufficient funds; that he gives no reason for his refusal to pay petitioners' judgments; that petitioners, "upon information and belief," charge that both the aforesaid administrators claim to be the lawful representative of said estate, and "petitioners are informed and believe" that all of the funds, assets, and property of the estate still remain in the hands of administrator W. E. Waldrop; that the estate of Mrs. Maddox at the time of her death consisted of real estate, cash money, Government bonds, mortgages and personal property, as listed, of the aggregate value of $8000; that in August, 1939, administrator Waldrop obtained an order to sell the home place of Mrs. Maddox, and at the sale on the first Tuesday in November, 1939, George Barnes was the highest bidder at the price of $600, and the other house and lot was bid in and sold to J. H. Jackson for $370; that although both of these properties were regularly sold to the parties named, the administrator has failed to collect the amounts bid, or any amount, and resell the property, and has allowed taxes to accumulate and remain unpaid; that the State Highway Department instituted proceedings to condemn the Maddox home place for highway purposes, but the administrator failed to take any action to protect the estate's interest; that he has failed and neglected to wind up the estate, but has carried along the same at unnecessary expense, to the injury of petitioners; that, so far as petitioners know, J. L. Bailey has taken no part or action toward the estate, other than qualifying as administrator; and that "upon *Page 237 
information and believe" W. E. Waldrop, individually, is insolvent, and is neglecting the administration.
Petitioners prayed for process; that second originals be served upon the non-resident defendants; that a guardian ad litem be appointed for the minor defendants, Harris Waldrop and Robert Lewis Waldrop; that W. E. Waldrop and J. L. Bailey be restrained and enjoined from further acts of administration; that some proper and discreet person be appointed receiver to retain possession of all property of the estate; that administrator Waldrop be directed to deliver to such receiver all assets of the estate, and be required to make a report of all assets coming into his hands and the disbursements made by him; that the receiver pay to petitioners their judgments, and that the balance in his hands, after payment of the expenses of the administration, be disbursed to the heirs at law of Mrs. Maddox. The petitioners filed an amendment striking from the petition such phrases as "so these petitioners are informed and believe," "upon information and belief," and "petitioners are informed and believe;" and adding the allegation "that said W. E. Waldrop has never accounted to an administrator de bonis non for the assets that came into his hands as administrator, or turned over said assets to an administrator de bonis non."
Various defendants filed demurrers, general and special, which were overruled. All the defendants except Bailey filed answers. At interlocutory hearing the following documentary evidence was introduced on behalf of the plaintiffs:
The original petition of Mrs. Wylene Barnes v. W. E. Waldrop, administrator of the estate of Mrs. Emma B. Maddox, deceased, No. 4425, filed at the October term, 1938, of Spalding superior court, with all entries thereon, including the entry of service and the judgment of the court. The original motion for a new trial, filed by Waldrop as administrator, in the same case, with the order of the court overruling the same. The answer of Waldrop, administrator. The original petition of Mrs. Addie Nolan in her suit against W. E. Waldrop, administrator, No. 4426 of Spalding superior court, together with all entries on it. The answer of W. E. Waldrop in said case, and the motion for new trial therein.
Certified copies of the following, under one certificate of the ordinary of Butts County: (a) Petition of W. E. Waldrop, administrator, in reference to the accounts of Mrs. Wylene Barnes *Page 238 
and G. C. Barnes in the amount of $3000, for services rendered to the deceased, Mrs. Maddox, and petition of W. E. Waldrop as administrator, in reference to the account of Mrs. Addie Nolan for $1440 for services rendered, together with statements of said accounts by Mrs. Barnes and Mrs. Nolan. (b) Petition of Kirby Frank Cheek Maddox, asking for the removal of Waldrop as administrator, the rule nisi directed to Waldrop as administrator, and the order of the court of ordinary removing him as administrator and appointing J. L. Bailey as administrator de bonis non. (c) Special plea of W. E. Waldrop, administrator, to the jurisdiction of the court of ordinary of Butts County, in the matter of the petition of Kirby Cheek Maddox for the removal of Waldrop as administrator; answer to the rule nisi issued therein, and the order of the court of ordinary of Butts County overruling the special plea. (d) Demurrer of W. E. Waldrop, administrator, to the petition of Kirby Cheek Maddox, and order of the court of ordinary overruling said demurrer. (e) Appeal of W. E. Waldrop, as administrator, from the judgment of the court of ordinary removing Waldrop as administrator; and the ordinary's certificate approving appeal bond by Waldrop from the judgment of the court of ordinary. (f) Appeal bond executed by W. E. Waldrop as principal, and Great American Indemnity Company as surety, in appeal from the judgment of the court of ordinary to the superior court. All of these documents were included under a single certificate of the ordinary of Butts County.
Also admitted in evidence on behalf of the plaintiffs were (1) The bond of Joseph L. Bailey as administrator de bonis non, certified by the ordinary. (2) Certified copy of the petition in the case of W. E. Waldrop, administrator, v. Heirs at law of Mrs. Emma B. Maddox, being No. 609 in the superior court of Butts County, together with the certificate of the clerk of that court. (3) A certified copy of the annual return of W. E. Waldrop as administrator, covering the period from August 4, 1937, to January 1, 1938; also a certified copy of the application of W. E. Waldrop as administrator, for leave to sell lands of the estate, together with the order granting the application. (4) Certificate from the tax-collector of Butts County, that the taxes for the years 1938, 1939, and 1940 against the estate have not been paid. (5) A notice from the commissioners of roads and revenues of Butts County, *Page 239 
dated December 19, 1939, and addressed to G. D. Barnes, that it was their intention to condemn a described lot owned by him, adjoining a lot of Mrs. Emma B. Maddox, for highway purposes. (6) And a certificate of the clerk of the superior court of Butts County, dated February 13, 1941, that he has been unable to find any condemnation suit or proceeding against any property of the estate of Mrs. Emma B. Maddox; also that he was unable to find any papers or records of any suits of Kirby Frank Cheek Maddox against W. E. Waldrop, as administrator of the estate of Mrs. Emma B. Maddox, as appealed from the court of ordinary in said county.
The plaintiffs introduced as witnesses C. L. Redman and Judge Chester A. Byars. Mr. Redman testified in substance as follows: He had been appointed temporary receiver for the estate of Mrs. Emma B. Maddox, but did not, after his appointment, at any time make a demand on Mr. Waldrop, the administrator, to turn over the property to him, but had a casual conversation with Mr. Wallace, the attorney for the administrator, with reference to the matter. "I don't remember exactly our conversation, but it is my recollection that Judge Wallace said that the question of the legality of the appointment of Mr. Bailey was the reason he had not turned over the assets; the legality of Bailey's appointment, or the dismissal of Waldrop. He said he didn't think the matter had been legally carried out, that he didn't think there was any person legally appointed as to whom he could turn it over to. The estate has not been turned over to me. I am attorney for Butts County. I don't know whether condemnation proceedings have been filed against the lands of the Waldrop estate, the house at Flovilla, but we met on the premises. It has never been carried through yet. There were two houses to be moved, and we just continued the matter as to the best way to do, whether we could get the survey changed or move the two houses. They were served on Mr. Bailey as administrator, and we met down there and had a little hearing. . . There was a condemnation proceeding started but no award was made." On direct examination by Mr. Goodrich, of counsel for the plaintiffs, the witness testified: "I remember when this case came up for a hearing last fall on a rule nisi. . . I was present at that hearing. I do not remember whether the point was made at that time that the assets of the estate had not been turned *Page 240 
over to the receiver under an order of the court, or whether that matter was discussed. . . None had been turned over to me. I do not remember whether the statements were made by Mr. Wallace and Cumming, or in their presence, that the money was still in the possession of Waldrop at the bank of Jackson, and was just as safe in the bank as it was in my possession, and that they would not turn it over to anybody until the proceeding was finally heard. I do not remember exactly, Judge Goodrich, whether or not you stated at that time that it was all right for the money to remain there in the bank; that we would not insist on the court attaching Mr. Waldrop for contempt for not obeying the order of the court, but would consent for the money to remain in the bank in Mr. Waldrop's possession until this matter was heard by the court, but I think there was some statement of that sort made. Just what the particular statement was I don't remember definitely."
Judge Chester A. Byars testified on direct examination as follows: "I was present when this case was called last fall on the original rule nisi on the appointment of a receiver. I remember that there was something said about the parties not having complied with the order of the court and turning over the money to the receiver. Judge Wallace made the statement that he was filing a plea to the jurisdiction, and he had rather the question be adjudicated before his client turned over the money. You, Judge Goodrich, made the statement that the money was in the bank. Judge Wallace made the statement there was $6500 or some like amount in the bank. You made the statement that if it remained in the bank it would be all right, and not comply with the order of the court in turning over the money to the receiver until the matter was finally adjudicated. I understood that the money was in the possession of Waldrop in the bank, subject to the final order of the court, but I would not require Waldrop to turn over the money to the receiver until I had passed on the motion to dismiss the petition." On cross-examination the witness testified: "I remember that it was stated at the hearing that the hearing would not be held, because the plaintiff was not ready; that there were some other people who were to be served by publication. I do not remember that when the question of whether or not Mr. Waldrop had accounted to the receiver was raised, it was then brought up that he had a right to be heard before he was commanded to do anything. You, Judge *Page 241 
Wallace, and Mr. Goodrich agreed that the money could stay where it was until a final adjudication of the case; that they would not bring up the question of his not complying with the order at that time, because some people were not served, and it required sixty days to serve them by publication; and the question was not brought up to me why he had not complied with the order of the court commanding him to turn the money over to the receiver, but was left to the final adjudication of the case before he would turn over the money. Somebody said that it would stay in the bank at Jackson, but I was not interested after Mr. Goodrich agreed not to press the point as to why he had not complied with the order. If it satisfied them, it did me. But either Mr. Redman or Mr. Goodrich or somebody made the statement there was $6500, approximately that amount, in the bank at Jackson. I don't remember that anybody had charge of the money but the bank in Jackson." On redirect examination he testified: "The matter came up that Mr. Waldrop was technically in contempt of court for not having turned the money over to Mr. Redman; and then the statement was made that the money was safe in the bank and would be safe in the bank, and then you, Mr. Goodrich, said, `If that is true, I will wait on the contempt for him not having turned over the money.' I don't remember by whom, but the statement was made that the money was in the Jackson bank, and that there was in the neighborhood of $6500. I am not saying that was the exact figure."
Admitted in evidence on behalf of the plaintiffs was an affidavit by J. W. O'Neal, cashier of the Jackson National Bank, that "there is deposited in said bank certain funds belonging to the estate of Mrs. Emma B. Maddox, late of Butts County, deceased, which said funds are not subject to check by W. E. Waldrop, for the reason that said W. E. Waldrop was removed as administrator of said estate in 1939, and the ordinary of Butts County has officially notified this bank that said W. E. Waldrop no longer had any power or authority or control of said funds." And on behalf of the defendants was an affidavit by the same cashier, to the effect that "the estate of Mrs. Emma Maddox, deceased, has on deposit the sum of $6052.28, and that said amount now remains to her estate credit, none of which has been transferred to Mr. J. L. Bailey nor to any other person so far as the books of said bank show."
At the conclusion of the hearing a receiver was appointed. Exceptions *Page 242 
were taken to that order, and to the overruling of the demurrers.
1. The suit was filed in Spalding superior court. It is a proceeding in equity. The only defendants residing in Spalding County are certain persons who are alleged to be the heirs at law of Mrs. Emma B. Maddox, and W. E. Waldrop, who is alleged to be administrator of her estate. No affirmative relief is prayed against the heirs. In First National Bank of Atlanta
v. Holderness, 189 Ga. 819 (7 S.E.2d 682), we ruled that a creditor asserting a claim against the estate of a deceased person whose executor is a resident of Fulton County could not bring the suit in Carroll County by merely alleging that certain of the heirs and legatees resided in the latter county, when there was no allegation and no positive prayer which sought any material equitable relief against them. Complainants did not give the superior court of Spalding County jurisdiction by joining as defendants the heirs of the deceased residing in that county, without praying for some affirmative equitable relief against them.
2. Nor did the superior court of Spalding County acquire jurisdiction because of the residence in said county of W. E. Waldrop, alleged in one paragraph of the petition to be the duly appointed and qualified administrator of the estate of Mrs. Maddox, but it affirmatively appearing in another part of the petition that as a result of a proceeding brought in the court of ordinary of Butts County, the county of his appointment, he was by the order of the ordinary of Butts County removed as said administrator, and J. L. Bailey was appointed administrator de bonis non in the place of W. E. Waldrop. There is nothing in the face of the petition in the present case to indicate any invalidity in such act of removal, or even irregularity. The court of ordinary being for such purpose a court of general jurisdiction, every presumption will be indulged in favor of the validity of its orders and judgments. Elsewhere it is alleged that on October 30, 1939, J. L. Bailey did in the court of ordinary of Butts County make the usual oath and gave bond as required of administrators. He is a resident of Butts County, and is joined as a defendant in the present suit. The only *Page 243 
relief prayed against W. E. Waldrop is against him in his capacity as administrator. Prayers (c) and (e) are as follows: "(c) That said W. E. Waldrop, administrator of said estate, and the said J. L. Bailey, a resident of Butts County, be restrained and enjoined from further acts of administration on the estate of the said Mrs. Emma B. Maddox, deceased. (e) That said administrator, W. E. Waldrop, be directed to surrender, deliver and turn over to said receiver all of said assets and property belonging to said estate, and that said administrator be required to make a report to this court of all of the property and assets received by him belonging to said estate, and all disbursements of all funds on the account of said estate." It has been held that when in the same suit liability is asserted against two persons residing in different counties, and no case is established as against the one residing in the county where the suit is brought, the court can grant no relief as to the non-resident defendant, because of the lack of jurisdiction.Rounsaville v. McGinnis, 93 Ga. 579 (21 S.E. 123);Hamilton v. Dupree, 111 Ga. 819 (35 S.E. 684); Central ofGa. Ry. Co. v. Brown, 113 Ga. 414 (38 S.E. 989, 84 Am. St. R. 250); Warren v. Rushing, 144 Ga. 612 (87 S.E. 775). The mere fact of praying for an injunction against a defendant does not in all events confer the right to file the equitable petition in the county of his residence, and to draw to that county residents of other counties. Railroad Commission v. PalmerHardware Co., 124 Ga. 633, 640 (53 S.E. 193), and cit. It has also been held that where the petition in an equity case does not set forth a cause of action against the only defendant residing in the county in which the suit is brought, the court is without jurisdiction to grant the substantial relief prayed against a defendant residing in another county. Glenn v. Cauthen,150 Ga. 784 (105 S.E. 365); McClellan v. American Tie TimberCo., 135 Ga. 370 (69 S.E. 486). So here it must be held, on demurrer, that the superior court of Spalding County has no jurisdiction, since the facts as pleaded by complainants do not show them to have a cause of action which can be enforced against W. E. Waldrop as administrator, he having been removed, and therefore no suit can lie against him in his representative capacity. No relief is sought against the other Spalding County defendants.
3. The suit was not maintainable, for another reason. Complainants set forth no facts to show that they have an enforceable *Page 244 
claim against the estate of Mrs. Maddox. No time is set forth at which the alleged personal services were rendered, or the nature thereof, except in the most general terms, or the agreement, if any, under which they were rendered; nor is a bill of particulars set forth. No attempt is made to state with definiteness and particularity the basis of the claims, but merely that they were for nurse services and housework performed for the deceased during the last years of her life. It is true that it is alleged suits were filed against the administrator "for the aforesaid services," and that the suits went to verdict and judgment, but it is also alleged that these verdicts were rendered on October 2, 1939, and elsewhere in the petition it is asserted that Waldrop was removed as administrator on October 4, 1938. A verdict and judgment against an administrator in his representative capacity, based on a claim against the estate, rendered after he had been removed from office, can not bind the estate, and so far as the estate is concerned they are mere nullity. Groce v. Field, 13 Ga. 24. See Glisson v.Carter, 28 Ga. 516; Weddington v. Huey, 80 Ga. 651
(6 S.E. 281); and compare Tedlie v. Dill, 3 Ga. 104; Irwin
v. Shuford, 144 Ga. 532 (87 S.E. 674), and cit. As shown on the face of the petition, the judgments in favor of complainants were entered against Waldrop in his representative capacity after his removal, but before the qualification of an administrator de bonis non, and while sufficient assets remained in his hands to satisfy the judgments. It is the insistence of counsel for defendants in error that these judgments are binding upon the assets of the estate remaining in the hands of the former administrator. The argument in support of this contention is that the laws of Georgia in regard to the administration of estates are derived from the common law, subject to certain statutory changes; that at common law an administrator could be removed and an administrator de bonis non appointed, but the two were entirely independent of each other. The removed administrator was accountable to heirs and creditors only, and not to the administrator de bonis non. The administrator de bonis non could not be made a party to a pending suit against the removed administrator. A creditor could institute suit against a removed administrator, or prosecute a suit already filed against the removed administrator, to subject assets remaining in his hands. That was the only way such assets could be subjected. As supporting this *Page 245 
contention, counsel cite Skinner v. Frierson, 8 Ala. 915; Wilson v. Auld, 8 Ala. 842; Graves v. Flowers, 51 Ala. 402
(23 Am. R. 555); Thomas v. Hardwick, 1 Ga. 78.
We agree with counsel that, except as changed by statute, our probate law is that of the common law, meaning in this instance the ecclesiastical law, since that also came within our adopting act. Beall v. Fox, 4 Ga. 403, 425; Finch v. Finch,14 Ga. 362; Gaither v. Gaither, 23 Ga. 521, 528; Evans v.Arnold, 52 Ga. 169, 179; Peale v. Ware, 131 Ga. 826,829 (63 S.E. 581). We do not find it necessary to decide whether counsel's position is sustained by the English authorities, since we are satisfied that the conclusions sought to be established by counsel are not of force in this State. Thomas v. Hardwick, supra, was decided on a state of facts which arose before the act of 1845, hereinafter referred to. See, in this connection,Broach v. Walker, 2 Ga. 428; Oglesby v. Gilmore,5 Ga. 56(5). In Goodwynne v. Bellerby, 116 Ga. 901, 904
(43 S.E. 275), it was said that the two cases last cited "were decided upon questions arising before the passage of the act of 1845 and the adoption of the Code, and were based upon what the court then thought was the common law. Since these decisions the Code has made quite an innovation with regard to the rights and powers of administrators de bonis non. Under the common law, if an administrator commenced an action and died, his successor could not be made a party to the action, but it abated. So an administrator de bonis non could not call his predecessor to an accounting for a devastavit. All this has been changed in this State by the Code. The administrator de bonis non may be made a party and continue a suit commenced by his predecessor, as was done in this case. He can also call his predecessor to an accounting for a devastavit. The true law is, and has been for a great many years, that if the assets are such that the money recovered would belong to the estate, then the administrator may sue thereon in his representative capacity, and in case of his death or removal the right to collect the assets would go to the administrator de bonis non." We quote also from the opinion inBailey v. McAlpin, 122 Ga. 616, 627 (50 S.E. 388): "At common law an administrator de bonis non could not call either his predecessor or the legal representative of his predecessor to an account for any property which the former representative had converted or wasted, nor could he claim or receive anything *Page 246 
but those goods, chattels, and credits which remained in specie and were capable of being identified as the property of his intestate. This was the law of Georgia prior to 1845. Thomas v.Hardwick, 1 Ga. 78; Paschal v. Davis, 3 Ga. 256;Oglesby v. Gilmore, 5 Ga. 56; Gilbert v. Hardwick,11 Ga. 599. In 1845 an act was passed which made it the duty of a removed executor or administrator and the representatives of a deceased executor or administrator to account fully with the administrator de bonis non. Cobb's Dig. 335. It was held that under this act an administrator de bonis non might call a removed predecessor, or the representatives of a dead predecessor, to an account touching the entire administration of the estate, and a predecessor was liable to him as at common law he was liable to creditors and distributees. Oglesby v. Gilmore, 5 Ga. 56;Hardwick v. Thomas, 10 Ga. 266. It was also held that the right of an administrator de bonis non to call his predecessor to an account did not divest the right of distributees, legatees, and creditors, but was consistent with and not hostile to their interest, and was intended to be exercised for their benefit and advantage. Shorter v. Hargroves, 11 Ga. 658; Knight v.Lasseter, 16 Ga. 151." See also Giles v. Brown, 60 Ga. 658. We are not dealing with a case where distributees are suing a former administrator because he wasted and misapplied the assets, as in the case of Shorter v. Hargroves, 11 Ga. 659. If it be conceded that in such an instance creditors have the same right to sue as distributees, under the authority ofBowers v. Grimes, 45 Ga. 616, it is enough to say that in the instant case no effort is made to hold the former administrator personally liable for waste and mismanagement.
By an act approved December 27, 1845 (Acts 1845, p. 15) it was provided that "Whenever an executor or administrator may have been heretofore or may be hereafter removed, or depart this life, chargeable to the estate which he or she represented, it shall be the duty of such removed executor or administrator, or the representative of such deceased executor or administrator, to account fully with the administrator de bonis non who may be appointed to finish the administration of such estate." This is now embodied in the Code, § 113-2204. Another section (113-2107) provides that "The revocation of letters of administration shall not abate any suit pending for or against the administrator, but the administrator de bonis non shall be made a party in proper cases by scire facias, *Page 247 
as in case of the death of a party." Other Code provisions for the administrator de bonis non to be made a party in suits pending against administrators when the latter have been removed from their trust are §§ 3-411, and 3-502.
In view of the foregoing, which we think contemplates that the removed administrator's successor must be made a party before a case can proceed to judgment, we are unable to agree with counsel for defendants in error in their contention that Thomas v.Hardwick, supra, is authority for the proposition that the judgments against Waldrop, the removed administrator, are binding upon the assets of the estate. There is no effort in the present proceeding to assert any individual liability against him.
4. The defects in the petition above discussed are fatal, and were all reached by the demurrers. They contained other grounds besides those dealt with herein, but they need not be treated, since the foregoing rulings are controlling. It was error to overrule the demurrers; and since on the face of the petition the complainants have no case entitling them to any of the relief prayed for, it was likewise error to appoint a receiver.
Judgment reversed. All the Justices concur.