## MARKHAM *vs.* HUFF.

1. The system of bringing before the Supreme Court for review the judgments of a chancellor granting injunctions, by what are called "fast" bills of exceptions, is different from the ordinary system of excepting to final judgments. Expedition is of the essence of the former, and they are not governed by the ordinary rules controlling the latter as to entering on the docket of this court, the time of hearing and the like. And the acts of 1870, 1877, regulating practice in ordinary cases, do not apply to these extraordinary cases, save that by the act of 1880 provision is made in regard to these cases in the event of the death of the presiding judge.

(*a*.) Where the record and bill of exceptions in an injunction case were not transmitted to the clerk of the Supreme Court by the clerk below within fifteen days from the service, the case must be dismissed.

2. One of the counsel for plaintiff in error obtained the record and bill of exceptions from the clerk of the Supreme Court, as the latter thought, for the preparation of his case; the attorney delivered the bill of exceptions to plaintiff in error, who carried it to a printing house and delivered it to the printer, in order to have certain portions of it printed as an abstract; the printer divided the bill of exceptions into numerous parts, and distributed it among various typographers; in order to indicate certain parts which were not to be printed, the printer drew lines across those portions with a blue pencil. When counsel for defendant in error desired the papers, the clerk called upon counsel for plaintiff in error for them; the bill of exceptions was put together and returned; one sheet appeared to have been mutilated, but it did not appear how this occurred; the bill of exceptions had upon it the printer's marks; but it had not been otherwise altered than as stated. These facts

appeared from affidavits, together with a disclaimer of any intention to violate any rule of this court:

*Held,* that the writ of error muŝt be dismissed.

(*a.*) This court will not impute intentional wrong to counsel or his client in this case, and, therefore, will not go further than to dismiss the case.

(*b.*) The rule of court forbidding records to be taken from the clerk's office without leave of court, will hereafter be enforced.

October 19, 1883.

Injunction.    Practice in Supreme Court.    Attorney and Client.    Records.    Before Judge SIMMONS.    Bibb County. At Chambers.    June 20, 1883.

Reported in the decision.

E. N. BROYLES ; C. ANDERSON, for plaintiff in error.

LYON & GRESHAM; W. A. HAWKINS, for defendant.

JACKSON, Chief Justice.

A motion was made to dismiss the writ of error in this case, on two grounds: First, that the clerk of the superior court had not transmitted the bill of exceptions, and a transcript of the record to this court, within fifteen days of the service of the bill of exceptions, as required by the 3213th section of the Code. And, secondly, because the bill of exceptions, after it reached this court, had been procured from the clerk by Mr. Broyles, of counsel for plaintiff in error, for the purpose of preparing his abstracts and briefs, as the clerk understood, but had been turned over by him to his client, the plaintiff in error, and by him delivered to a printer, who had divided it out among his journeymen printers, and thus, in separating the sheets and handling it for printing, it had been defaced ; that some lines were obliterated, and cross marks in blue pencil had been drawn across many pages of the record from corner to corner, so that the bill of exceptions and transcript, as it came from the court below, under the certifi-

cate of the clerk, could not well be recognized in the blurred and marked and defaced paper now in court, and said to be the same.

1. The first ground of the motion appears to us to be well taken.

It has been frequently held by this court, that the class of cases which are brought here for review by what are termed fast bills of exceptions, are distinct from those brought here from final judgments, and that the laws applicable to the ordinary writs of error are not applicable to them; hence, that the act of 1877, codified in sections 4272 (d), (e), (f), (g), is not applicable to such writs of error, and that absence from home of the judge, or any other reason for failure to sign and certify these fast bills within the twenty days allowed by law, will not remedy the objection as to these fast bills. See 60 *Ga.*, 315 ; 62 *Id.*, 209 ; 63 *Id.*, 308 ; 66 *Id.*, 244, 353. These cases are conclusive, that under section 3213 of the Code, no excuse would prevail to hold the case here, if a fast bill, unless signed and certified in twenty days. It is true, that in 1880 an act was passed to remedy this hardship in case of the death of the judge ; but in other misadventures, it would seem that this act made no alteration in the law, as ruled by this court, in reference to the judge's certificate. See Code, §3213 (a).

The duty of the clerk to make out a transcript and transmit it immediately to this court, if in session, and if not, to the next session, within fifteen days, is just as imperative as is that of the judge to sign and certify within twenty days allowed him. The necessity of the one officer making dispatch in speeding this fast bill, is as imperative and overruling and essential as the necessity of the other doing so. See Code, §3213, which declares, that "the bill of exceptions shall be tendered and signed within twenty days from the rendition of the decision, and the opposite party be served within fifteen days from such signing, with the bill of exceptions, and the clerk shall, within fifteen days, make out a transcript of the record, and transmit the same

immediately to the Supreme Court, if in session, and if not in session, then to the very next session; and its arrival by the first day of the term, or at any time thereafter during the term, shall be sufficient to insure a hearing."

Now, look at the act of 1877, and see what it provides, in Code, §4272(d), and how clearly it appears that the general assembly was dealing only with the regular cases and bills of exceptions, and not the irregular and fast bills. After enacting that no case shall be dismissed, etc., by reason of failure of the clerk of the superior court in transmitting the bill of exceptions and copy of the record, follows this proviso : " Provided the bill of exceptions and copy of the record in such cases shall reach the clerk of the Supreme Court before said court shall have finished the circuit to which said case belongs; but said case must be entered by said clerk of the Supreme Court on the docket of cases from the circuit to which it belongs, and be heard by the Supreme Court at the term to which it should have been returned after all the cases on the entire docket for that term have been heard;" and then the clerk shall give counsel notice, etc.

What lawyer ever heard or imagined that an injunction, or other fast bill case, was put to the heel of the entire docket, if it did not get to the clerk of this court in time to be regularly filed ? Who does not know that they start here often after their docket is concluded, and are set for trial, and do not wait for the heel of the entire docket ? The act of 1870, which provides for the transmission and trial of injunction and other fast cases, is wholly inconsistent with the act of 1877 ; and the latter act was never designed to amend or alter or impair its efficacy as a quick traveler to settle the issue made without delay, in order to prevent the ruinous consequences of delay in many cases. If any one who doubts will look at our docket, he will see the memorandum of the clerk of this court, to the effect that cases out of time are set to the heel of the entire docket, under that act of 1877, and counsel notified,

and such entry in regard to injunctions, etc., is no-
where seen. Such has always, since the passage of that
act, been the construction of it and practice under it. Nor
are we aware of any other act that alters or negatives this
ruling. The act of 1870, codified in the 4272d section of
the Code, was passed in respect to regular cases. It was
to correct evils in regard to them. The act providing for
fast bills was not in existence when it passed the two
houses. That for fast bills, and this for remedy as to the
transmission of regular cases, were approved the same day
by the governor, section 4273—a part of the same act—
shows to what cases it applied.

We are of the opinion, therefore, that the writ of error
should be dismissed on the first ground.

2. But however that may be, it must go out on the sec-
ond ground. The twenty-fourth rule of this court is ex-
plicit. It declares that "no paper belonging to the clerk's
office shall be taken therefrom without leave of the court,
and when such leave is granted, the party receiving papers
shall receipt to the clerk for the same." No leave was
given to withdraw this record; but the clerk states, on oath,
that, under the practice authorized long ago by the Judges
of the Supreme Court, to the effect that the rule, as to
withdrawal of papers from the clerk's office, be relaxed, so
far as to allow counsel to have them to prepare for argu-
ment, that he allowed Mr. Broyles to withdraw them for
that purpose; that defendant's counsel wanted to see them;
that he wrote to Mr. Broyles for them; that, in reply, said
Broyles returned a part of the transcript, with a note stat-
ing that the other papers were in the hands of the printer,
and would be returned as soon as possible; that he handed
the reply to defendant's counsel, and then called on Mr.
Broyles personally, and requested that all the papers be
returned immediately; that Mr. Broyles disclaimed any
intention of violating any rule of court by sending said
papers to the printer, and agreed to return them without
delay; that there were various words, numbers and lines

in pencil on said bill of exceptions when returned to him, which were not there when the papers were delivered to Mr. Broyles.

Mr. W. H. Scott states, on oath, that William Markham (who is the plaintiff in error) brought to him, at his office on Alabama street, the original bill of exceptions and transcript of the record in the cause of William Markham *vs.* William A. Huff, for the purpose of having the same printed; that after agreeing on terms, the papers were left with him; that he did not know they were papers or records belonging to the Supreme Court, or that there was any particular reason why they should be treated by the printers otherwise than any common manuscript, or more care taken of them; that certain parts he was told not to print; that he drew lines with his blue pencil across and through these, as they now appear; that the fastenings were taken out and the different parts of the whole transcript were placed in the hands of different printers, and by them set up; that he then put them together just as they were; that parts of the bill of exceptions were distributed to the printers to put in type, and were being used for that purpose when Mr. Broyles came in and recalled the papers, and deponent got the several parts of the bill of exceptions, those printed and those not printed, and put them together just as they were, and returned them to Mr. Broyles, and the balance of the printing was done from copies sent to his office by Mr. Broyles; that no changes or alterations were made in the papers beyond what is stated; that some of the papers appear to have been torn and mutilated, but he cannot state how this occurred, that if he had known they were important court papers, he would not have made marks on them; that he had about a dozen men at work on the business, as the work was required to be done in a great hurry; that he did not have control of the papers more than a day or two.

Neither of the present bench of this court is aware of any relaxation of the rule of court referred to by the clerk,

as it was long ago, probably before either of them came upon the bench. It will not be relaxed hereafter. But the relaxation mentioned by the clerk could not possibly have extended to such hawking about of the records of the court as this testimony exhibits. It extended only to the use of the original papers to prepare the case for argument, according to the understanding of the clerk, and that officer seems to have been as much astounded as this court was, when he ascertained that counsel, to whom he had entrusted records in his official custody for one purpose, had perverted them to another and wholly different purpose; for he went in great haste to see Mr. Broyles about it, and Mr. Broyles seems to have gone with equal haste to see the printer, and to do what he should have done before—recall the original, and furnish copies for print.

The attorney general, in arguing the case before us, with the candor and fairness which distinguish him, did not attempt to justify, hardly to extenuate, a proceeding which must shock the whole profession, as outside of all law and subversive of all purity in practice. It is not meant that Mr. Broyles would deliberately do wrong, or that there would be any danger of his altering or conniving at the alteration of any record of any court; nor is it meant that his client, Mr. Markham, would stoop to such means for success in a case; but it is believed that the Lord's prayer, "Lead us not into temptation," is an invocation which all men, however honest and incorruptible, need frequently to address to the Throne of Grace. At all events, the law so looks upon all humanity; it recognizes the fall common to the race, and it does not put it in the power of one side of a case to ruin the other; therefore, it will entrust its records to neither side.

Nor do we understand, as was argued by counsel before us, that the Supreme Court of the United States adopts a different rule. True, it has its records printed, but the printing is done under the supervision of its

clerk, who stands indifferent between the parties. This court would be delighted were our legislature liberal enough with the money of the people to allow us to adopt a similar rule, and have our records printed, under the supervision of our clerk. It is true, too, as was argued, that our opinions are printed; but that is under the supervision of our reporter, and after the case is over and the judgment rendered, and there can be no temptation to do wrong. It is true, too, as was insisted, that the acts of the general assembly are printed; but that is done by the public printer under bond, and an officer of the state as to that business, and with no temptation to err.

It was also urged before us by Mr. Broyles, that the practice was common of thus turning our records over to clients by counsel and distributing them to printers, and not informing the printers that they are important court papers, and to be careful not to mutilate or mark them; or perhaps that it was common for counsel to entrust the original records of this court to printers, to print such parts of them as were pointed out. We were not aware of such a practice. It is a very bad practice. It is a practice that must cease.

But it is useless to press argument in such a case. The mere statement is enough to condemn what has been done, in all just minds; and that it may not again be repeated, to justify the court in dismissing this case. The first duty of a court is to preserve the purity of its practice and the sanctity of its records. This is of more consequence than the private interests of any man or any number of men. This cannot be done, if the records of courts, in the emphatic language of Judge Warner, are allowed "to be hawked about," at the will of any party to any cause.

The charity "that believeth all things" for the best, (in addition to their character for integrity) casts its broad mantle over Mr. Broyles and Mr. Markham, and will not impute to either any wrong intent in this most unheard-of proceeding with original court records, nor will it per-

mit the court to conclude that any contempt of its authority actuated either.    Therefore, it will not proceed beyond the very mild judgment of dismissing the case, the record of which has been by their agency badly picked to pieces, illy assorted together, obliterated in a few lines, blue cross-marked on many pages, and polluted all over with unoffi-cial and therefore unsanctified hands.

Writ of error dismissed.