## RAILROAD COMMISSION OF GEORGIA v. PALMER HARDWARE COMPANY.

1. Where an injunction was granted on August 16, 1905, and the presiding judge left the State on the same day and did not return until after the lapse of more than twenty days; and where the plaintiffs in error sought to tender the bill of exceptions in due time, and after the return of the judge he certified it at the earliest possible date, stating the cause of the delay, and the plaintiffs in error were without fault, the writ of error will not be dismissed.

2. The decisions in *Jackson* v. *State*, 93 *Ga.* 216, and *Gibson* v. *Thornton*, 99 *Ga.* 647, reviewed and reversed. *Markham* v. *Huff*, 72 *Ga.* 106, distinguished.

3. Certain dealers in stoves, stove plates, etc., in Savannah filed an equitable petition against the railroad commissioners of the State and certain railroad companies. It was alleged that the commissioners had issued a circular fixing freight rates 'which the railroads should charge on articles of the character mentioned, from Atlanta to various other places in the State; that these rates were so low that they discriminated in favor of Atlanta shippers against those in Savannah shipping to the same places under like circumstances; that this was done under a policy of discrimination on the part of the commissioners for that purpose; that they considered interstate rates for freight in fixing intrastate rates; and that the railroad companies would obey the commissioners and charge the reduced rates from Atlanta without changing the rates previously existing from Savannah. By amendment it was alleged that the lower rates had been by the commissioners made to apply to shipments from Rome, Dalton, and Rockmart. None of the railroad commissioners lived in Chatham county where the proceeding was instituted, but in other counties of the State; and only one of the railroad companies had its main office there. An injunction was prayed against the commissioners and the railroad companies. *Held*, that, on demurrer by the commissioners to the jurisdiction, it was error for the judge of the superior court of Chatham county to entertain jurisdiction and grant the injunction prayed.

4. The action, if meritorious, should have been brought in the county where one or more of the railroad commissioners resided.

5. As the superior court of Chatham county was without jurisdiction to pass on the merits of the questions involved (the point having been duly

made by the commissioners) and the grant of an injunction was therefore error, this court will not now pass on the reasons given by the presiding judge for such grant, or discuss the question whether, if the court had had jurisdiction, the judge could have granted an injunction in such a case.

Argued November 17, 1905.—Decided January 9, 1906.

Injunction. Before Judge Cann. Chatham superior court. August 16, 1905.

*John C. Hart, attorney-general,* and *Ellis, Wimbish & Ellis,* for plaintiff in error.

*Cann & Barrow, Lawton & Cunningham, J. Randolph Anderson, Osborne & Lawrence, W. L. Clay,* and *Garrard & Meldrim,* contra.

LUMPKIN, J. 1, 2. The injunction was granted on August 16, 1905. The bill of exceptions was certified on October 7, the presiding judge adding to his certificate the following statement: "I further certify that I left the State of Georgia, on the afternoon of August 16, 1905, and did not return until September 29, 1905; that, owing to necessary corrections and the public business, this is the earliest date upon which the bill of exceptions could be signed by me within the State of Georgia. This October 7, 1905. The bill of exceptions was handed the sheriff of Chatham county for me on September 1, 1905." If the decision in *Jackson* v. *State,* 93 *Ga.* 216, and that in *Gibson* v. *Thornton,* 99 *Ga.* 647, should be followed, the certificate must be held to have been signed too late, and the writ of error must be dismissed. In the first-mentioned case it was held, that the practice in reference to bills of exceptions in cases of injunction had been made applicable to criminal cases by the act of September 7, 1891; that the certificate must be signed within twenty days from the date of the judgment complained of; and that although the absence of the judge from the State caused the delay, and it was so certified, the writ of error must be dismissed. A similar ruling was made in the case of *Gibson* v. *Thornton,* supra. Leave was asked to review these decisions, and also that in *Markham* v. *Huff,* 72 *Ga.* 106, so far as necessary. The leave was granted.

Prior to the act of September 12, 1881 (Acts 1880-81, p. 114), the code contained the following section in regard to verifying or certifying bills of exceptions after the time regularly prescribed therefor: "If the judge trying the cause resigns, or otherwise ceases to hold his office as judge, when the bill of exceptions is tendered,

he may nevertheless sign and certify; and if he should die before· certifying the same, or otherwise become incapable of acting, then. the party may verify his bill of exceptions by his own oath, or that; of his attorney, together with the oath of at least one disinterested. member of the bar who was present at the trial; and such verifications shall operate in the same manner as the certificate of the judge. If the judge is absent from home, or by other casualty fails to certify the bill of exceptions within the time specified (and without fault of the party tendering), he may still sign and certify as soon as possible, which shall be held and deemed valid." Civil Code,, § 5542. This section provides for several contingencies: (1) if the; judge trying the cause resigns, or otherwise ceases to hold office;. (2) if he should die before certifying, or otherwise become incapable· of acting; (3) if the judge is absent from home, or by other casualty· fails to certify the bill of exceptions within the time prescribed,. without fault of the party tendering it. It was held several times; that these provisions applied only to ordinary bills of exceptions,. and not to what are called "fast" bills of exceptions, such as those· excepting to the grant or refusal of interlocutory injunctions and the like. *Gray* v. *Field,* 60 *Ga.* 315; *Roberts* v. *Leonard,* 62 *Ga.* 209; *Moring* v. *Ross,* 63 *Ga.* 308; *Hardin* v. *Swann,* 66 *Ga.* 244;. *Sewell* v. *Edmonston,* Id. 353. Thereupon, and no doubt on account of those decisions, the act of September 12, 1881, was passed. Its caption was, "An act to provide for the signing and certifying· of bills of exceptions now required by law to be signed in twenty· days, after said twenty days, in certain cases." It declared that; · "all the laws of this State now in force, having reference to the sign. ing and certifying of bills of exceptions after the expiration of' thirty days from the adjournment of the court and the rendition of the decision, and in case of the death of the judge, shall apply, so. far as the same will conform, to all bills of exceptions which are· now required by law to be signed and certified in twenty days after· the rendition of the decision." This has been codified, and appears. in the Code of 1895, § 5543.

In the case of *Markham* v. *Huff,* 72 *Ga.* 106, no point was made· as to the time when the judge certified the bill of exceptions, but as; to the time when the clerk transmitted the bill of exceptions and. record to this court. In the opinion Chief Justice Jackson made· use of the following language: "It is true that in 1880 an act was;

passed to remedy this hardship in case of the death of the judge; but in other misadventures, it would seem that this act made no alteration in the law, as ruled by this court, in reference to the judge's certificate." But it is evident that this was an obiter dictum, and we think an erroneous one. The caption of the act of 1881 provides for "the signing and certifying of bills of exceptions," etc. Certainly the legislature did not contemplate that a judge could sign and certify a "fast" bill of exceptions after his death. In the event of death, verification was to be made as provided in cases of ordinary bills of exceptions. "*All the laws*"—not some of them —as to signing and certifying bills of exceptions after the lapse of thirty days from the decision or the adjournment of court were made to apply to "fast" bills of exceptions after the lapse of twenty days from the decision complained of; and also the provision for verification in case of the death of a judge was declared applicable. The expression "and in case of the death of the judge" did not limit or qualify all of the preceding portion of the act, but referred to a distinct contingency. This is a remedial act, and should be construed liberally to carry into effect the purpose of the legislature; and in doing so we should not lose sight of the trend of legislation to prevent the dismissal of bills of exceptions on account of the absence of the judge from home, or other casualties affecting him, without fault of the excepting party. At the same session of the legislature another act was passed tending to diminish dismissals. Acts 1880-81, p. 123, now embodied in the Civil Code, §§ 5556, 5557. The case of *Jackson* v. *State*, 93 *Ga.* 106, supra, cited only decisions rendered prior to the act of 1881, except *Markham* v. *Huff*, 72 *Ga.* supra, and made no reference at all to that act. The decision in *Gibson* v. *Thornton*, 99 *Ga.* supra, apparently followed that just referred to. In both of them only headnotes were written. We think it is plain that a misconception of the meaning of the act of 1881 has grown out of the obiter dictum in *Markham* v. *Huff*, and it should be corrected. If the presiding judge is prevented from signing a "fast" bill of exceptions within twenty days from the date of the judgment, decree, or order to which exception is taken, by reason of absence from home or other casualty, and without fault of the parties tendering it, he may still sign and certify as soon as possible. The cause of delay stated in this case was sufficient. In so far as the decisions above referred to conflict with

the views here expressed, they are overruled.    Indeed, in *Grace* v. *Gordon,* 113 *Ga.* 88, the opinion shows dissatisfaction with them.

3-5. The demurrer was based on substantially two grounds: that the superior court of Chatham county had no jurisdiction of the parties, and that county was not the proper venue of the suit; and that the petition set forth no cause of action which entitled the plaintiffs to the relief prayed.    The second proposition was divided into several grounds in the demurrer, stating the reasons with greater specification.    Was the case properly brought in the superior court of Chatham county, and could that court require all the defendants to appear and answer there?    None of the defendants are residents of that county, except the Central of Georgia Railway Company, which has its main office there.    The argument that the proper venue of the suit was in Chatham county rests practically on three positions: (1) that the Central of Georgia Railway Company was an indispensable party, or, if not, then a necessary party, or, at least, a proper party; (2) that injunction was necessary against that company to prevent its obeying the order of the railroad commissioners and putting rates prescribed by it in the circulars known respectively as numbers 305 and 306 into effect, and charging the reduced rates from Atlanta and other named places, as therein declared; (3) that the company named had an interest in the subject-matter of the suit, and this case is therefore different from those in which the defendant in the county of whose residence suit was brought was without interest.

Sometimes parties to suits in equity have been divided into three classes,—formal, necessary, and indispensable parties.    Shields *v.* Barrow, 17 How. 139; Chadbourne *v.* Coe, 51 Fed. 479, 480; Williams *v.* Bankhead, 86 U. S. 563, 571.    Sometimes the words "necessary" and "indispensable" have been considered synonymous, and parties in equity have been classified as necessary parties and proper parties.    Fletcher's Eq. Pl. & Pr. §40; Pom. Rem. (2d ed.) 329; Donovan *v.* Campion, 85 Fed. 71; Lynch *v.* Rotan, 39 Ill. 14.    The Civil Code, §4844, states the rule to be that "generally all persons interested in the litigation should be parties to proceedings for equitable relief."    We need not enter into an extended discussion of the classes of parties to equitable proceedings, or the correct mode of designating them.    The test for determining the venue of an equitable action in this State is not made to depend merely on

the technical name given to the parties defendant. It will not be unprofitable to trace the history of the present law on the subject. In *Carter* v. *Jordan, 15 Ga.* 81, 82, Benning, J., said: "The question of the residence of the defendant, as affecting the right of suit against him, can not arise there [in England], because the court of chancery there sits at but one place, and every person who can be sued at all has, of course, to be sued at that place, no matter where he resides." See also, on this subject, 1 Dan. Ch. Pr. *550. In this State, where equitable relief is administered by the superior courts, the effect of residence on jurisdiction of the person arises. The constitution of 1777 contained the following provision as to the venue of suits: "All matters in dispute between contending parties, residing in different counties, shall be tried in the county where the defendant resides, except in cases of real estates, which shall be tried in the county where such real estate lies." Section XXXVIII, Watkins' Dig. 13. The constitution of 1789 provided as follows: "All causes shall be tried in the county where the defendant resides: except in cases of real estate, which shall be tried in the county where such estate lies; and in criminal cases, which shall be tried in the county where the crime shall be committed." The constitution of 1798, as amended, after specifying cases in which the superior courts had exclusive jurisdiction, added: "The inferior courts shall also have concurrent jurisdiction in all civil cases (except cases respecting the title to lands), which shall be tried in the county wherein the defendant resides." Provision was then made for cases of joint obligors or joint promisors, or cases against makers and indorsers of promissory notes residing in different counties.

In *Gilbert* v. *Thomas, 3 Ga.* 581, it was held that the words "civil cases," thus used, were not intended to apply to or fix the venue of equity causes. This ruling was repeated in *Rice* v. *Tarver, 4 Ga.* 571, and it was said: "According to the spirit and analogies of our constitution and laws, and the usage of courts of chancery, the inception of a proceeding in equity must be in some one county, where, on account of the residence of a defendant, or on some other account, the court has jurisdiction." On page 582, however, it was said: "But because equity causes are not within the limitations of the constitution, it does not follow that a complainant in equity has a rambling commission (to use the language of the counsel for

the defendant in error) to bring his suit in any county in the State, where he may choose to locate it. Nor does it follow, that where the suit is properly located, the complainant may draw defendants out of their own counties necessarily and universally, to answer in the county where the suit is brought." As to following the spirit· of the constitution and laws, in regard to venue, as nearly as practicable, and the usages of the courts, in the absence of direct legislation or constitutional provision, see *Jordan* v. *Jordan,* 12 *Ga.* 77; *Carter* v. *Jordan,* 15 *Ga.* 76; *Jordan* v. *Jordan,* 16 *Ga.* 446, 452, 454, 455; *Lavender* v. *Thomas,* 18 *Ga.* 668(5), 678; *Anderson* v. *Seago,* 19 *Ga.* 501; *Kendrick* v. *Whitfield,* 20 *Ga.* 379; *Wade* v. *Powell,* Id. 645; *Smith* v. *Iverson,* 22 *Ga.* 190; *Rawson* v. *Mills,* 23 *Ga.* 597. Perhaps it might fairly be said that the general rule deducible from these cases was that the residence of a necessary party was sufficient to confer jurisdiction or determine the venue, although it was not always clear, and doubts were sometimes ex- ·pressed.

The amended constitution adopted in 1861 for the first time specifically referred to the venue of equitable causes. It declared that they "shall be tried in the county where one or more of the ·defendants reside, against whom substantial relief is prayed." Con- stitution of 1861, art. 4, §2, par. 5 (Code of 1863, §4977). The framers of the constitution doubtless knew of the decisions above cited, and were unwilling to leave the matter as there determined. They did not, therefore, say that equity causes might be tried in any county where a proper party or a necessary party resided, or according to the usages of the courts theretofore, or by seeking to apply analogies, but required further that such cases should be tried in the county where one or more parties resided against whom substantial relief was prayed. Substance, not form alone, was here brought into consideration. If analogy to the requirement in regard to cases at law could not ordinarily determine by construc- tion the venue further than by looking to the question of proper or necessary parties defendant, the constitution sought to make the analogy still closer by fixing the venue with a view to real sub- ·stance. We do not mean that there must be a sort of testing by ·exact measure, or that equity will resort to niceties of difference, as if it determined venue by troy weight. But as between two de- .fendants resident in the State, the venue should be in the county

where resides that one against whom substantial relief is prayed, although the other may be a proper party to the case. A similar provision to that contained in the constitution of 1861 has been retained in each of the constitutions since adopted, in 1868 and 1877. See Code of 1873, § 5120; Civil Code of 1895, § 5871. Under this requirement, how stand the decisions? Could this equitable action be brought in Chatham county, solely because the Central of Georgia Railway Company had its main office in that county; and could the railroad commissioners, who resided elsewhere in the State, be required to answer there? It has been held that an equitable petition brought against a sheriff and others, to enjoin the former from proceeding with the levy of an execution, was improperly filed in the county of his residence, the other defendants, who were the owners of the execution, not being residents of that county. *Dade Coal Co.* v. *Anderson,* 103 *Ga.* 809; *Rounsaville* v. *McGinnis,* 93 *Ga.* 579; *Woolley* v. *Georgia Loan & Trust Co.,* 102 *Ga.* 591; *Reynolds & Hamby Co.* v. *Martin,* 116 *Ga.* 495; *Smith* v. *Coker,* 74 *Ga.* 390. Indeed this was ruled prior to 1861. *Mays* v. *Taylor,* 7 *Ga.* 238. And though injunction, standing alone, might appear to be substantial relief, and very necessary relief to stop a sale or levy, yet a prayer for injunction against a sheriff was not considered substantial in such sense as to confer jurisdiction over a person for whose benefit the process was proceeding and who resided in another county of the State. The real controversy was with him, and the substantial relief sought was against him. So an equitable petition seeking to cancel a sheriff's deed must be brought in the county of the grantee's residence, though the sheriff who made the deed should certainly be a party to the proceeding to cancel it. *Caswell* v. *Bunch,* 77 *Ga.* 504; *Coker* v. *Montgomery,* 110 *Ga.* 20; *Palmer* v. *Inman,* 122 *Ga.* 226; *Paulk* v. *Ensign-Oskamp Co.,* 123 *Ga.* 467. Thus it will be seen that the mere fact of praying an injunction against a defendant does not, in all events, confer the right to file the equitable petition in the county of his residence, and to draw to that county residents of other counties. In *Townsend* v. *Brinson,* 117 *Ga.* 380, joint trespassers were sued in the county of the residence of some of them. Equitable relief was prayed against one of the defendants who was a non-resident of the county, but no substantial equitable relief was prayed against the resident defendants. It was held that the court was without

jurisdiction to grant the equitable relief against the non-resident defendant, and that the demurrer on that ground should have been sustained. See also *Johnson* v. *Griffin*, 80 *Ga.* 551; *Vizard* v. *Moody*, 115 *Ga.* 491; *Orr Shoe Co.* v. *Kimbrough*, 99 *Ga.* 143. In *Ellis* v. *Lamar*, 44 *Ga.* 9, a bill in equity was filed in Spalding county against Brewer who resided in that county, and Lamar who resided in Chatham county. It was alleged that Brewer was the agent of Lamar, and as such had made fraudulent representations to the complainant and had sold him guano which was found to be worthless; that Brewer made the sale on commission and was interested to that extent, and that he had in his hands property of Lamar, his principal. The prayers were, that Brewer be enjoined from putting the assets out of his possession, and for a decree against Lamar for loss or damage. A demurrer was sustained, and the judgment was affirmed. This court said: "Equity will not entertain jurisdiction over a principal out of the county of his residence, by linking him with the party who acted as his commission merchant, upon general allegations of fraud and interest by commissions on sales of the property consigned." In *Meeks* v. *Roan*, 117 *Ga.* 865, it was held, that where a deed was executed to secure a debt, and under authority conferred in it a person was appointed to make sale of the property upon default of payment, who was called a trustee, though not vested with title to the property or interest in it, and where he was advertising and preparing to make the sale, this did not give the superior court of his residence jurisdiction to grant any relief against the grantee in the security deed who resided in another county, although the petition prayed an injunction against the sale by such trustee or appointee. In *Ellis* v. *Farmer*, 119 *Ga.* 238, an equitable proceeding was brought in the county where the land involved in the controversy lay, and where the tenant in possession of it resided. The plaintiff claimed under a bond for title from the holder of the title, who was the landlord of the resident tenant, and who lived in another county. The plaintiff joined in the suit the non-resident landlord and the resident tenant, and prayed for the former to be required to execute a conveyance to him, that the title be decreed to be in him, and that he recover mesne profits from both the landlord and the tenant. It was held that the court of the county of the tenant's residence had no jurisdiction to grant the equitable relief prayed against the non-resident land-

lord. In *Edwards* v. *Kilpatrick,* 70 *Ga.* 328, where suit was brought by heirs to cancel a deed and for an accounting, joining the administrator of their ancestor as a party defendant, and charging collusion between him and the holder of the deed and the refusal of the administrator to bring suit, it was held that this did not give jurisdiction in the county of the administrator's residence. See also *Lawson* v. *Cunningham,* 34 *Ga.* 530.

In Alabama there is a statute which requires that an original bill shall be "filed in the district in which the defendants, or a material defendant resides." It has been held that a material defendant is a defendant who is a necessary party, really interested in the result of the suit, and against whom a decree is sought. Gay *v.* Brierfield, 106 Ala. 615. In another case it is said that "a party is a material defendant within the meaning of the rule, whose interest is antagonistic to the complainants, and against whom relief is prayed." Waddell *v.* Lanier, 54 Ala. 440. Story's Eq. Pl. (10th ed.) §136, after referring to the rule in regard to necessary parties, says: "In a general view, all parties in interest are the proper objects of the rule. But the nature of that interest must still remain to be ascertained; as well as the point, how far it is liable to be affected injuriously by the decree." See also *Webb* v. *Parks,* 110 *Ga.* 639; City of Dawson *v.* Columbia Avenue etc. Trust Co., 197 U. S. 178.

Under the original petition the real, substantial controversy was, whether the rates fixed by the railroad commissioners injuriously discriminated in favor of shippers in Atlanta against shippers in Savannah, and whether the commissioners were authorized to make the order which they promulgated. It was not alleged that the rates formerly established and still existing from Savannah to various points were excessive in themselves. But it was alleged that the railroad commissioners issued a circular solely in the interest of the shippers from the city of Atlanta, reducing the rates on certain commodities from that place to certain other places in the State of Georgia, and that this was "an attempt to injuriously discriminate in favor of the city of Atlanta and the shippers of that city against the interests of the shippers of the city of Savannah and other places in the State of Georgia." It was further alleged that "said rates, as promulgated in said circular number 305, are made with the single view and purpose to accommodate and give a preference to the manufacturers and shippers of the city of Atlanta over the

manufacturers and shippers of other cities." This was charged to be in violation of law and in contravention of the rate-making power conferred upon them by the act creating the commission. It was not alleged that the railroads will charge the plaintiffs any higher freight rate than they have hitherto charged, but rather that those rates will remain the same, while rates from Atlanta to certain other points in the State will be diminished. It is evident that the gravamen of this petition was an alleged discrimination on the part of the railroad commissioners in favor of shippers in Atlanta, whereby they were alleged to be given less rates than shippers in Savannah under similar circumstances. The real attack was upon the act of the commissioners in promulgating the circular known as number 305. The Central of Georgia Railway Company has no direct interest in the question as to whether the railroad commissioners are discriminating in favor of Atlanta against Savannah, or giving Atlanta shippers more advantageous rates than Savannah shippers. The railway company may be interested in the rates fixed so far as they affect it, but it has no direct legal interest in determining whether the railroad commissioners are discriminating in favor of Atlanta shippers as against shippers in Savannah and other places. It is true that it was suggested in the petition and alleged in an amendment that the railway companies will obey the order of the commissioners and charge Atlanta shippers less rates than hitherto, while continuing to charge Savannah shippers the rates already established from that place. But this is not the real substance of the controversy, but an incident to the contention of discrimination on the part of the railroad commissioners. As to the railroad, this does not present a case of a trespass on property and an effort to enjoin the trespasser in the county of his residence. Nor do we think that the amendments to the petition materially changed the status. What has just been said in regard to the original petition applies also to them. There was some elaboration, and it was alleged that the commissioners had inaugurated a policy, and were taking into consideration interstate rates, and that the reduction in rates from Atlanta had been extended so as to reduce rates from Rome, Dalton, and Rockmart.

The argument is strongly urged, however, that the Central of Georgia Railway Company is interested; and that this differentiates the present case from those above cited. As already appears, in

one of those cases (*Ellis* v. *Lamar*) there was an allegation of fraud on the part of the agent and of an interest in him to the extent of his commission; and in the case last cited (*Ellis* v. *Farmer*) a judgment for mesne profits was prayed against the tenant in possession as well as against the landlord. In a number of the cases cited injunction was prayed against the resident of the county where the suit was brought; but that fact alone did not establish such county as the venue, or give jurisdiction there of the person of the nonresident defendant against whom the substantial relief was prayed. If an interest on the part of the Central of Georgia Railway Company is relied on as authorizing the suit to be brought in Chatham county, it appears that the interest of that company is not antagonistic to the plaintiffs or in common with the railroad commissioners, but is adverse to them and on the same side as that of the plaintiffs. The railroad commissioners reduced the amount which that company and others will be permitted to charge as freight from Atlanta and other places to certain points named in the circulars. It is alleged that they will enforce these rates and that the railroads will obey them and put the rates into effect. With this order or circular both the railroad company and the plaintiffs are dissatisfied, claiming to be injured by it, and that it is unreasonable and unlawful. If we should look beyond the petition (and as the case comes to this court on exception to the grant of an injunction, not from a direct ruling on the demurrer as such, there would seem to be no reason why we are confined to inspecting the petition alone), it is manifest that the railroads are active, along with the plaintiffs, in seeking to have the railroad commissioners enjoined. The Central of Georgia Railway Company filed an elaborate cross-bill, not against the plaintiffs, but against the railroad commissioners, alleging that the reduced rates would be illegal as against it and work injury to it, and praying that they be enjoined from enforcing such rates; and each of the other railroad companies, with one exception, filed a cross-bill against the commissioners, and joined in the prayers for injunction. The company named as an exception did not oppose the grant of an injunction, though it filed no cross-bill. Indeed the plaintiffs and the railroad companies made common cause against the commissioners. If, however, we confine ourselves to a consideration of the petition and demurrer, as if the case were being heard on the demurrer alone, it still is patent that the

interest of the railroad company is not adverse to the plaintiffs, but that the interests of both are adverse to the railroad commissioners. So that, if it is sought to differentiate this case from others cited on the ground of interest in the Central of Georgia Railway Company and to rest the jurisdiction on that ground, the question might be thus tersely stated: If two persons living in the same county in this State both have interests adverse to a third person who resides in another county and each claims to have a cause of complaint against such third person because of an act done by him, can one of the residents of the county file an equitable petition against the other and the non-resident, and thus confer jurisdiction upon the superior court in the county of their common residence, and require the non-resident to come there and litigate? Of course, the prayer for injunction against the railroad companies furnishes another ground for the argument in favor of the jurisdiction. With that we have already dealt. We are now considering the argument that the Central of Georgia Railway Company has an interest in the subject-matter, and that this fact distinguishes this case from others which we have cited.

Let us now consider some of the decisions of this court, cited by counsel, and by our learned brother of the circuit bench, in support of the position that the venue was in Chatham county. The decision in *Rice* v. *Tarver*, 4 *Ga.* 571, supra, was decided prior to the constitution of 1861; and, moreover, the jurisdiction in the county where the bill was filed was established by several facts: (1) An action at law had been brought there, which it was necessary to enjoin; (2) an indorser on a note lived there, whom it was sought to hold liable as a debtor; (3) the non-resident defendants in Jones and Houston counties did not raise any objection to the jurisdiction, but a codefendant sought to do so for them. The venue being thus established, other parties, necessary or proper, could be joined. In *Wynne* v. *Lumpkin*, 35 *Ga.* 208, it was charged that a collusive agreement between certain legatees and others was entered into, under which an administrator with the will annexed (who was also named as trustee for one beneficiary) illegally and without authority sold land to a non-resident of the State, who purchased with notice, and was in collusion with the administrator and the other parties; that the purchaser went into possession and placed upon the land a tenant, who, by his engagement with the purchaser, would pay the

rents and profits to him, and they would thus pass beyond the limits of the State; that by reason of the financial condition of the defendants residing in Georgia, the complainants believed that they "will be benefited by no decree except such as may be enforced upon said land, and the rents and profits thereof, three fourths of which they claim as their property." The prayers were, that the tenant be enjoined from paying rents and profits to the purchaser and that a receiver be appointed therefor; that the sale be rescinded and declared void, and the deed be canceled; that if it were not void as to all the interests, it should be declared so as to some of them; that an accounting should be had for rents and profits; that there should be partition; that if other relief could not be had, the defendants, except the tenant, should be required to account for the value of the land, with damages for withholding it; for general relief, and for discovery from the tenant. The demurrer was filed only by the administrator and trustee, who resided in another county. It was held that the bill was properly filed in the county where the tenant and other defendants resided, and where the land lay. Here all the defendants were charged to be connected with the fraud. *Van Dyke* v. *Van Dyke,* 120 *Ga.* 989. The facts stated above distinguish this case from that of *Ellis* v. *Farmer,* 44 *Ga.,* supra, and show that it was entirely different from the case at bar.

In *Austin* v. *Raiford,* 61 *Ga.* 125, a bill sought an accounting and decree against both the principal and surety on an administrator's bond, the latter having also been surety on the bond of a former administrator, and it was alleged that the two defendants had possessed themselves of the whole estate in controversy, but how much each had the complainant did not know, and asked discovery. It was held that the suit was properly brought in the county of the residence of the principal. In *DeLacy* v. *Hurst,* 83 *Ga.* 223, it was held that "The action containing the legal right to have judgment against D. (who resides in Meriwether county) on his indebtedness to the plaintiffs, and the equitable right to have set aside an alleged fraudulent sale by D. to S. (who resided in another county), the superior court of Meriwether county had jurisdiction of the cause." Clearly, substantial relief was prayed against D., and it appears that his grantee was alleged to have colluded with him to delay and defraud creditors. A receiver, the setting aside of the conveyance or conveyances, and other relief were prayed; and the decision was

substantially similar to that in *Kruger* v. *Walker*, 111 *Ga.* 383. . In that case a judgment creditor filed an equitable petition for the purpose of reviving a dormant judgment and subjecting certain property to it. It was said: "Nothing could be more substantial than to convert a dormant judgment without a lien into a living judgment binding upon specific property;" and the case was held to have been properly brought in the county of the debtor's residence, although there was joined with him a resident of another county who was alleged to have colluded with him to conceal, by means of a fraudulent conveyance, the real ownership of the property sought to be subjected.

In each of the cases of *Wright* v. *Southwestern Railroad Co.*, 64 *Ga.* 794, and *Mayo* v. *Renfroe*, 66 *Ga.* 408, the State was the substantial party in whose behalf the execution was proceeding; and as it could not be sued, and therefore the venue could not be fixed with reference to it, it was held that a bill to enjoin the levy could be brought in the county of the residence of the sheriff who was proceeding to act. That this was an exceptional situation, and that the decisions are based on the ground stated, see *Rounsaville* v. *McGinnis*, 93 *Ga.* 581, and *Dade Coal Co.* v. *Anderson*, 103 *Ga.* 810. The remark cited from the concurring opinion of Mr. Justice Miller in Chicago etc. Railway Co. *v.* Minnesota, 134 U. S. 460, as to filing a bill in chancery, has no reference to the question of venue. In our opinion none of the authorities cited to sustain the jurisdiction in Chatham county are sufficient to accomplish that result.

We hold, under the facts of this case, that Chatham county was not the proper venue, and the objection of the railroad commissioners to the bringing of the cause there was well founded. It needs no discussion to show that if the original suit was not brought in the proper county, jurisdiction could not be conferred there by the filing of answers in the nature of cross-bills by one or more of the defendants against the commissioners. The ruling to the effect that where a plaintiff voluntarily submits himself to a jurisdiction by bringing suit in a certain county the defendant may file an equitable petition against him, in order to have adjudicated all matters necessary for his complete defense, has no relevancy to this case. *Moore* v. *Medlock*, 101 *Ga.* 94.

If this equitable proceeding can not properly be brought in Chatham county, in what county should it be brought? It is urged by

counsel for plaintiffs in error that it must be brought in Fulton county. This argument is based upon the Civil Code, §2186, which, among other things, declares that "the office of said commissioners shall be kept at Atlanta." It is argued that this creates an official residence or domicile where suit must be brought. All suits must be brought against some person, either natural or artificial. *Barbour* v. *Albany Lodge,* 73 *Ga.* 474; *Western and Atlantic R. Co.* v. *Dalton Marble Works,* 122 *Ga.* 774. Only a person can be a party. In fixing the venue of a suit against the railroad commissioners of this State, it must be determined whether the commission as a body is a corporation, and therefore an artificial person which can be made a party, or whether it is simply an aggregate body composed of the individual commissioners, and they are the parties to the action. The law of this State nowhere declares the commission as such to be a corporation, or to have power to sue or be sued in that name. On the contrary, it more frequently speaks of the commissioners than of the commission. See Civil Code, §2185 et seq. In the two instances where provision is made for suit to be brought for a penalty incurred by a railroad company, it is expressly declared that it shall be brought in the name of the State. Civil Code, §§2195, 2196. A mere declaration that the office of the commissioners shall be kept at Atlanta does not create a corporation. The decision in the case of Texas and Pacific Ry. *v.* Interstate Commerce Com., 162 U. S. 197, is relied on; but an examination of that case will show that the act of Congress creating the interstate-commerce commission, and providing that it shall be lawful for it to apply by petition to the circuit court sitting in equity, was held sufficient to create a body corporate with legal capacity to be a party plaintiff or defendant in the Federal courts. In this respect the act of Congress is entirely different from the act creating the State railroad commissioners. The commission not being a body corporate, if the venue of a suit is to be fixed with reference to the commissioners, it follows, under the constitutional provision already quoted, that it would be in the county where one or more of the commissioners reside.

Inasmuch as we have held that this suit was not properly brought in Chatham county, and that on objection duly made the superior court of that county was without jurisdiction over the persons of the railroad commissioners, and could not render the decree which is

before us for consideration, we do not think we should enter into a discussion of whether the decree would have been right or erroneous, if rendered by a court having jurisdiction over the parties. In other words, if the superior court of Chatham county was without jurisdiction to pass on the case at all, it is unnecessary to go further and consider what some other court might or might not do.

We are aware that decisions determining that a court has no jurisdiction, or that cases are not brought by proper parties, are sometimes spoken of as resting on a technicality, and there is a disposition on the part of some to treat with great indifference, if not actual disdain, everything which they refer to as "technical." But this spirit may be carried to an extreme. Certainly technical forms and ceremonies should not be carried to such a point as to hamper or obscure a proper administration of justice. But on the other hand, the laws must be administered according to law, and justice must be determined with proper system and method. A suit must be brought by a person having the right to sue, and against a person who is properly sued; otherwise cases might be decided and rights of the real parties adjudicated in their absence. The right to be sued in the proper county is not merely technical, but is a substantial, constitutional right. On this subject the language of the distinguished jurist ex-Chief Justice Bleckley may well be quoted: "Those who are impatient with the forms of law ought to reflect that it is through form that all organization is reached. Matter without form is chaos; power without form is anarchy. The State, were it to disregard forms, would not be a government, but a mob. Its action would not be administration, but violence."

*Judgment reversed. All the Justices concur.*